**STV INTERNATIONAL MARKETING, a Utah Corporation, Plaintiff,**

**v.**

**CANNONDALE CORPORATION, a Delaware Corporation, Defendant.**

**Civ. No. 89–C–1166G.**

United States District Court, D. Utah, C.D.

Aug. 31, 1990.

Brian S. King, Ronald E. Nehring, Salt Lake City, Utah, for plaintiff.

James S. Jardine, Anthony B. Quinn, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came regularly before the court on defendant's Motion to Dismiss or Transfer Venue. Plaintiff was represented by Brian S. King and Ronald E. Nehring. Defendant was represented by James S. Jardine and Anthony B. Quinn. The parties submitted briefs on the matter and presented oral argument after which the court took the matter under advisement. Now being fully informed, the court enters its Memorandum Decision and Order.

## FACTUAL BACKGROUND

STV is a Utah corporation owned and operated by Tom Verhalen, president and treasurer, and his wife, Sigi Verhalen, vice president and secretary. The Verhalens live in Park City, Utah. Cannondale is a Delaware corporation with its principal place of business in Georgetown, Connecticut. Cannondale manufactures bicycles and other sporting goods which it sells throughout the United States and abroad.

In October 1983, the Verhalens contacted Cannondale Corporation by letter and expressed an interest in marketing Cannondale products in Europe during the Summer of 1984. In November 1983, Cannondale wrote the Verhalens indicating that the corporation did not have an interest in forming a relationship at that time. However, during the Christmas holiday season of 1983, Tom Verhalen met the Robert Stanger family who were vacationing in Park City, Utah. Tom was the Stanger's ski instructor for a week. During that week, Tom shared with Mr. Stanger his idea for marketing Cannondale products during the summer months in Europe. Mr. Stanger indicated that he was a director of Cannondale Corporation, that he knew Joseph Montgomery, the president of Cannondale, and that he would contact Cannondale upon his return to the East coast in order to encourage Mr. Montgomery to establish a relationship with the Verhalens.

In January 1984, Mr. Stanger returned to Utah and sought out Tom Verhalen. Mr. Stanger said that he had had discussions with Cannondale representatives and assured Verhalen that he would be receiving a call from Mr. Montgomery, the president of Cannondale. Shortly thereafter, the Verhalens did hear from Mr. Montgomery who provided Cannondale's toll free number and a reference to Dan Alloway to discuss the specifics of marketing Cannondale products in Europe in the Summer of 1984. The Verhalens wrote a second letter to Cannondale giving them details of their upcoming trip to Europe and information about their business background. The Verhalens then contacted Mr. Alloway and requested product information from Cannon-

dale, whereupon Cannondale sent a product list showing what equipment was available to be marketed in Europe. Representatives of Cannondale also discussed with the Verhalens by telephone specific arrangements concerning compensation.[1] Plans were then made for the Verhalens to meet with Cannondale officials in Connecticut in the Spring of 1984 to discuss marketing strategies and product information.

The Verhalens began their sales efforts for Cannondale in Europe in the summer of 1984. They operated initially out of a tent and later out of a van with no formal place of business in Europe, although they had a mailing address and telephone number in Germany. They communicated with Cannondale mostly by telephone, usually from post offices.

From 1984 to 1988 the Verhalens spent each summer in Europe and returned to Utah for the ski season. Twice a year, on their way to and from Europe, the Verhalens met with Cannondale representatives for several days in Connecticut. At these meetings the parties discussed such things as Cannondale's plans for its products, its marketing strategies, and the Verhalens' plans and efforts on Cannondale's behalf.

The Verhalens and Brian Foley, Cannondale's international sales director, met when he was in Park City, Utah for three days in December 1985 or January 1986. Plaintiffs allege that during that time they had extensive discussions with Foley regarding plans for marketing Cannondale products in Europe during the Summer of 1986.

Cannondale and the Verhalens never had an official written contract. In April 1986, just prior to their departure to Europe for the summer, the Verhalens wrote to Cannondale, noting that "[W]e don't have a definite commission schedule and haven't since we started selling Cannondale in 1984." On their way back from Europe that fall, the Verhalens met with represent-

atives of Cannondale at its Connecticut office for one of their bi-annual meetings. At that time Cannondale gave the Verhalens a letter which set out the parties' commission arrangement for calendar year 1987. In the fall of that year the Verhalens again were at Cannondale Connecticut offices, this time to discuss Cannondale's European plans for 1988.

In January 1988 Cannondale notified the Verhalens of its decision to revise its approach to marketing in Europe and terminated its relationship with them effective March 31, 1988.[2] The termination letter was received by STV at Park City, Utah.

According to the Verhalens, they were in frequent communication by telephone and correspondence with Cannondale concerning production schedules and marketing plans during the times they were in Utah. In this regard, plaintiff asserts that questions or problems which European contacts had with Cannondale equipment were discussed extensively. Plaintiff also claims that advertising literature and brochures from Cannondale relating to its products were received in Utah and that all payments from Cannondale for products sold by plaintiff in Europe were sent to the Verhalens' address in Park City, Utah. Plaintiff contends that Cannondale actively advertised its merchandise in Utah, and that Cannondale maintained ongoing relationships with several independent agents in Utah through whom it sold its products.

### ANALYSIS

Defendant argues that the complaint should be dismissed for lack of personal jurisdiction over Cannondale, or in the alternative, that the action should be transferred to the United States District Court for the District of Connecticut.

■ Although plaintiff bears the burden of establishing personal jurisdiction over

---

1. Initially, the Verhalens were to sell Cannondale products in Europe at agreed upon minimum prices and could keep any amounts they obtained above those prices. Later they were paid a commission based on the type and price of products sold.

2. Thereafter, Cannondale replaced plaintiffs and provided a full time staff in Europe to handle its sales efforts there.

the defendant, only a prima facie showing need be made when a motion to dismiss for lack of jurisdiction is presented. *Rambo v. American Southern Insurance Co.*, 839 F.2d 1415, 1417 (10th Cir.1988). Thus, at this stage of the proceedings the plaintiff's burden is relatively light, and the court's inquiry is not finally determinative of the matter.[3] However, the burden remains on the plaintiff to prove at trial by a preponderance of the evidence that jurisdiction is proper. *Milligan v. Anderson*, 522 F.2d 1202, 1207 (10th Cir.1975).

■ Jurisdiction over a nonresident corporate defendant can be either "general" or "specific" with the "minimum contacts" standard of due process varying depending on whether the plaintiff's claims "arise out of" the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 and 9, 104 S.Ct. 1868, 1872 n. 8 and 9, 80 L.Ed.2d 404 (1984); *Frontier Federal Saving and Loan Assoc. v. National Hotel Corp.*, 675 F.Supp. 1293, 1296 (D.Utah 1987). The Supreme Court of Utah has explained the difference between general and specific jurisdiction as follows:

> General personal jurisdiction is the concept reflected in a doing business statute, which requires substantial and continuous local activity; specific personal jurisdiction is the concept applicable to a long-arm statute, which requires only the minimum local contacts.... Where a defendant's forum state activity is extensive, the forum may assert personal jurisdiction on either related or unrelated claims (doing business concept). Where the defendant has only minimum contacts with the forum, personal jurisdiction may be asserted only on claims arising out of the defendant's forum state activity (long arm or "transaction of business" concept).

*Abbott G.M. Diesel v. Piper Aircraft*, 578 P.2d 850, 853 n. 6 (Utah 1978) quoted in *Frontier, supra*, 675 F.Supp. at 1296. In the case at bar, plaintiffs claim jurisdiction under both general and specific jurisdiction.

## I. GENERAL JURISDICTION

■ Plaintiff asserts that Cannondale has engaged in substantial and continuous activity in Utah of such a nature that it may be considered generally present in Utah and thus amenable to suit in this jurisdiction for any purpose. As support, plaintiff points to sales of Cannondale products in the State of Utah, advertising of Cannondale products in Utah, and Cannondale's activities in Utah in regard to the plaintiffs.

As to sales of Cannondale products in Utah, the amount of such is extremely small compared with Cannondale's overall sales volume.[4] Nevertheless, sales in Utah have been substantial, totalling about $300,000 per year since 1972. What is more important, however, is that the sales in Utah have been made through independent contractors. Sales through independent contractors are specifically excluded in Utah as a proper basis for general jurisdiction.[5] Therefore, by itself, the fact that Cannondale sells its products in Utah through independent contractors is not enough to support a finding of general jurisdiction.[6]

---

**3.** A court may proceed with its inquiry into personal jurisdiction using affidavits alone, or it may permit additional discovery, or it may hold an evidentiary hearing. *Nova Mud Corp. v. Fletcher*, 648 F.Supp. 1123, 1124 (D.Utah 1986).

**4.** Less than 1% of Cannondale's annual sales have been made in Utah, and those have been made exclusively through independent contractors.

**5.** Utah Code Ann. § 16–10–102 (1990) enumerates activities which do not amount to "transacting business" in this state, including, "effecting sales through independent contractors". *See Frontier* 675 F.Supp. at 1296 n. 3 discussing the

application of this statute to general jurisdiction determinations.

**6.** In *Frontier*, this court stated:

> Although the decisions authorizing personal jurisdiction over nonresident defendants "doing business" in Utah are sparse, ... Utah appears to require solicitation of business within the state plus some other factor such as maintaining a warehouse or making deliveries....

675 F.Supp. at 1296 n. 3.

As to alleged advertising of Cannondale products in Utah, plaintiff has failed to demonstrate any factual basis for the assertion.[7]

Plaintiff contends that Cannondale has maintained an active, continuous and substantial presence in Utah apart from sales and advertising by reason of the acts of Cannondale in Utah, including (1) correspondence covering business affairs; (2) telephone calls; (3) payment of commissions; (4) discussions in the course of a ski vacation in Utah between Cannondale's international marketing director and plaintiffs concerning STV's activities in Europe on behalf of Cannondale; (5) transmittal of a termination letter; and (6) supplying business cards to STV listing STV's Utah address. Each of these acts has to do with Cannondale's relationship with STV concerning the sale of Cannondale products in *Europe*, not in Utah. This singular relationship is not the type of substantial and continuous activity affecting Utah required for a finding of general jurisdiction.

Cannondale has never been registered to do business in Utah and has no office, place of business, real estate, employees, telephone listings or bank accounts in Utah. Further, there is no evidence of Cannondale's presence in Utah beyond what has been discussed. The Court rules that Cannondale's contacts with Utah are insufficient to establish general jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

## II. SPECIFIC JURISDICTION

■ A three step analysis is required in cases asserting specific jurisdiction under Utah's long-arm statute, Utah Code Ann. § 78–27–24: (1) identifying the defendant's acts implicating Utah; (2) determining whether a nexus exists between the plaintiff's claim and the defendant's conduct and (3) assessing the nature of the defendant's contacts against due process stan-

dards.[8] In applying these three steps, it is important to keep in mind the broad and far reaching purpose of the Utah legislature in enacting the long-arm statute, i.e. that it "should be applied so as to assert jurisdiction over non-resident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78–27–22. Further, in construing this statute, the Utah Supreme Court has noted that "[c]onsistent with this policy ... the protection afforded by Utah courts must be extended to the fullest extent allowed by due process of law." *Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106, 1110 (Utah 1985) (citing *Brown v. Carnes Corp.,* 611 P.2d 378, 380 (Utah 1980)).

### A. *Acts which implicate Utah*

The first inquiry is whether one of the specifically enumerated statutory acts is met. In this regard, Utah Code Ann. § 78–27–24, provides in pertinent part:

Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the *following enumerated acts,* submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to *any claim arising from:*

(1) *the transaction of any business within the state;*

\* \* \* \* \* \*

(3) the *causing of any injury within the State* whether tortious or by breach of warranty;

(Emphasis added.) Plaintiff asserts that Cannondale has transacted business within the state and caused tortious injury within the state.

Utah Code Ann. § 78–27–23 defines "transaction of business within this state" as "activities of a non-resident person, his agents, or representatives in this state which affect persons or businesses within

---

7. Plaintiff's affidavit avers that on "information and belief" Cannondale widely advertises in Utah. This is specifically denied by defendant and plaintiff has supplied no further evidence.

8. *See Frontier, supra,* 675 F.Supp. at 1296 and cases cited therein.

the state of Utah." This court previously has held that under this definition a person may transact business within the state despite an absence of physical presence in Utah. *Brown v. Washoe Housing Authority,* 625 F.Supp. 595, 599 (D.Utah 1985); *Nova Mud v. Fletcher,* 648 F.Supp. 1123 (D.Utah 1986). In *Nova Mud* this court held that where a non-resident defendant telephoned the plaintiff, a Utah Corporation, to effectuate a contract with the corporation, the telephone call met the statutory requirements in that it "affect[ed] persons and businesses within the State of Utah." *Id.* at 1126. *See McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Under the broad interpretations aforesaid, Cannondale "transacted business" within this state in connection with its relationship with the Verhalens.

Plaintiff's claim that defendant caused tortious injury within Utah is based upon Cannondale's tortious interference with STV's economic relations with it's *European* customers. This raises the question where the injury occurred. Cannondale claims that the alleged injury occurred in Europe where the customers reside.

Plaintiff relies in part on *Frontier, supra* and *Berrett v. Life Insurance Company of the Southwest,* 623 F.Supp. 946 (D.Utah 1985) to establish that an injury occurred in Utah. These cases are distinguishable from the situation in the case at bar. *Frontier* involved injury to *property physically located in Utah.*[9] *Berrett* involved a defamatory telephone call from Texas to Utah that interfered with plaintiff's relationship with *customers located in Utah.*[10] These cases recognize that an act which occurs outside the state may cause injury in the state thus satisfying the requirement,[11] but they do not address the situation where an act occurs outside or inside the state involving Utah residents causing injury *outside the state.*

In this case the relationships interfered with were plaintiff's relationships with its customers *in Europe.* Apparently, the basis for the allegation that injury occurred in Utah is that "loss of profits" occurred here by virtue of the fact that the Verhalens sometimes reside in Utah and have their place of business here. This is too tenuous a showing of injury in Utah. In this regard, this court is persuaded by a line of cases from New York addressing this problem in regards to a similar long-arm provision.[12] These cases stand for the proposition that the place where the business was lost reflects the economic reality of impact injury in commercial torts such as this. It is reasoned that loss of profits within a state in which a place of business is maintained simply is an insufficient basis on which to find that the injury occurred within that state as compared with the impact of actual business lost in another state.[13] This court adopts the reasoning of these cases and rules in this case that whatever injury may have been sustained,

---

9. In *Frontier* plaintiff was injured *with respect to its Utah property* because it lost anticipated security priority. Also, Frontier was delayed in opening the Radisson Hotel for business during the ski season, thereby losing valuable revenue from its Utah property. *Frontier* at 1297–1298.

10. In *Berrett* alleged wrongful conduct of plaintiff in connection with sales in Utah had occurred which prompted employees of the insurance company in Texas to contact by telephone various policy holders in Utah. Alleged tortious interference with contractual relations in Utah and defamation was asserted based upon telephone calls placed from Texas to Utah. *Berrett* 623 F.Supp. at 947.

11. This court stated in *Frontier,* that "the language of UCA 78–27–24(3) requires only that the injury occur in this state, ... the act causing the injury may occur elsewhere." 675 F.Supp. at 1297.

12. This provision, N.Y.Civ.Pro. L. & R. § 302, states in pertinent part:

    (a) Acts which are the basis of jurisdiction.... A court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

    \* \* \* \* \* \*

    3. commits a tortious act without the state *causing injury to person or property within the state, ...*
    (emphasis added)

13. In *Hannex Corp. v. GMI, Inc.,* 1989 WL 23960 (E.D.N.Y.1989) the court followed the Second Circuit as to the New York long arm statute and said that "in locating the situs of a commercial injury, *the place where plaintiff lost business is the most apt standard."* (emphasis added)

In *Lawrence Wisser and Co., Inc., v. Slender You, Inc. et al.,* 695 F.Supp. 1560, 1564 (S.D.N.Y. 1988) the court said:

occurred in Europe, where the business was lost, not in Utah. To hold to the contrary would create an illogical result as stated in *Arbitron Company v. E.W. Scripps, Inc.*, 559 F.Supp. 400 (S.D.N.Y. 1983):

> [F]inancial loss ... [is an] inadequate link [with the forum state for jurisdictional purposes]. [It] would have been suffered by the plaintiff ... wherever it resided.... To hold to the contrary would allow courts to exercise jurisdiction over all out-of-state defendants provided that the plaintiff resides in [the forum state] and claims a [financial loss]....[14]

### B. *The Nexus Requirement*

The second step in the analysis under Utah's long arm statute is to determine whether plaintiff's claim "arises out of" defendant's performance of one of the enumerated statutory acts.[15] The claims of the plaintiff in this case are contract claims and claims of tortious interference with economic relationships. We need not reach the nexus requirement as related to tortious injury within the state since the court has already ruled that the injuries here alleged occurred in Europe and not in Utah.

As to the contract claims, even though the court has ruled that defendant in this case has "transacted business" under the Utah long arm-statute, it must also be determined whether those claims "arise out of" such transaction of business sufficient to satisfy the nexus requirement.

As in *Nova Mud*, the "arising out of" requirement may be met by the creation or

---

> Here, the only injury to [the plaintiff] was the loss of patronage of a client [in another state] and the corresponding loss of profits from that customer in [the state seeking to exercise jurisdiction]. The loss of profits cannot sustain jurisdiction.
>
> *See also Granada Television, International, Ltd., v. Lorindy Pictures International, Inc.*, 606 F.Supp. 68 (S.D.New York 1984); and *Trafalgar Capital Corporation v. Oil Producers Equipment Corp.*, 555 F.Supp. 305 (S.D.N.Y.1983).
>
> The reasoning behind these cases is explained in an early case: *Spectacular Promotions, Inc., v. Radio Station Wing*, 272 F.Supp. 734 (E.D. N.Y.1967):
>
>> In determining the situs of an injury resulting from a [commercial tort] for jurisdictional purposes—and here the relevant consideration is fairness of the trial forum—there are three possibilities worth considering: (1) any place where plaintiff does business; (2) the principal place of business of the plaintiff; and (3) the place where plaintiff lost business.... Where the plaintiff is a large national corporation, permitting it to sue in any of the fifty states in which it does business would obviously be unfair to the defendant. The main place of business of the plaintiff would have no predictable relationship with the tortious activities of the defendant. The place where the plaintiff lost business would normally be a forum reasonably foreseeable by a tortfeasor and it would usually be the place where the critical events associated with the dispute took place. In determining whether or not a particular situs is a place of injury in the jurisdictional sense, we must be mindful that however 'minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State

> that are a prerequisite of its exercise of power over him.' ... The place of lost business obviously meets this test; it is doubtful whether the other two possible choices are 'reasonable and fair.' *International Shoe Co. v. State of Washington*, 326 U.S. 310, 320, 66 S.Ct. 154 [160] 90 L.Ed. 95 (1945)....

**14.** *See also American Eutectic Welding Alloys Sales Co., Inc., v. Dytron Alloys Corporation*, 439 F.2d 428 (2nd Cir.1971) wherein the court stated:

> Conceptually it is difficult for this Court to hold that a personal or property injury in another state by virtue of a tortious act committed in that state can be said to have suffered some injury within the State of New York simply because he is domiciled here.... To hold otherwise would open a veritable Pandora's Box of litigation subjecting every conceivable prospective defendant involved in an accident with a New York domiciliary to defend actions brought against them in the State of New York.

*Id.* 434.

**15.** This court said in *Frontier, supra*, 675 F.Supp. at 1298 that:

> This requirement has both statutory and due process aspects. Under the Utah statute a defendant is subject to jurisdiction only on claims "arising from" the enumerated acts alleged. Utah Code Ann. § 78–27–24, 78–27–26 (1987). If the plaintiff's claim does not arise out of the non-resident's statutorily described activity, the long-arm statute does not apply. This statutory requirement is dictated by similar federal due process concerns. *See Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238–39, 2 L.Ed.2d 1283 (1958).

breach of a contract with a Utah plaintiff where the defendant has no physical presence in this state.[16] But the nexus requirement is not met whenever there is creation or breach of a contract with a Utah plaintiff. Nor would the circumstance of presence in Utah by way of correspondence and telephone calls, without more, necessarily be sufficient to satisfy nexus.[17] However, in this case under the totality of facts which bear upon defendant's transaction of business within the state, under the broad interpretation of the Utah statute this court considers that the nexus requirement is met and that plaintiff has carried the small burden at this stage of the proceeding of showing that the claims here do arise out of the defendant's transaction of business.

## C. Due Process Limitations

The third step in the long arm jurisdictional analysis is to determine whether the assertion of jurisdiction is consistent with federal due process. As discussed in *Frontier*, the first question in the due process analysis is whether the defendant engaged in some purposeful act by which it availed itself of the privileges and protections of the forum.[18] The policy behind the "purposeful availment" requirement is to ensure that the defendant will be subjected to suit only in those instances where he should reasonably anticipate out-of-state litigation. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Accordingly, due process analysis requires "that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567).

In support of the argument that the defendants have purposefully availed themselves of the privileges and protections of the Utah forum, plaintiff stresses that a member of defendant's board of directors discussed details of the relationship between Cannondale and the Verhalens in 1984 in Deer Valley, Utah which was followed by a telephone call from Cannondale to the Verhalens in Park City, Utah in January of 1984 and regular correspondence and telephone calls thereafter from Cannondale to the Verhalens in Utah. According to plaintiff, the contacts by Cannondale demonstrate that it was on notice that litigation foreseeably could be brought in Utah.

Defendant argues that haling Cannondale into Court in Utah was not reasonably foreseeable in that the economic realities of the arrangements between the parties do not really involve the invoking of benefits

16. *Nova Mud*, unlike this case, involved a telephone call to the plaintiff in Utah which created the very contract at issue. 648 F.Supp. at 1126.

17. In *Rambo* the court said:

Certainly, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction.... However, the exercise of jurisdiction depends on the *nature* of those contacts. (citations omitted, emphasis added)

*Id.* at 1418.

18. [T]o establish this requirement it is essential that the plaintiff show *"some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws."* ... (citations omitted, emphasis added)

*Frontier, supra* 675 F.Supp. at 1298.

In *Rambo* the 10th circuit described this requirement as:

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 [100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)]. The defendant's contacts with the forum State must be such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice. *World Wide Volkswagen, supra,* 444 U.S. at 292 [100 S.Ct. at 564]. The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the *defendant has purposefully avail[ed] itself of conducting activities within the forum states.* *Hanson v. Denckla* 357 U.S. 235, 253 [78 S.Ct. 1228, 1239] ... (emphasis added)

*Rambo v. American Southern Insurance Co.,* 839 F.2d 1415, 1417 (10th Cir.1988) (quoting *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.,* 820 F.2d 1127, 1130–31 (10th Cir.1987)).

or the protection of the laws of Utah. Defendant submits that in substance this was an entirely Europe/Connecticut transaction, and that contacts with Utah were not only relatively minuscule in quantity but were tangential to the parties' relationship. In this regard, defendant contends that communications and contacts in Utah were merely "fortuitous," resulting from the fact that the Verhalens happened to reside for a portion of the year in Utah.

The Tenth Circuit has ruled that the "existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards." *Rambo v. American Southern Insurance Co., supra,* 839 F.2d 1415, 1418–19 (citing other Circuit Courts for the principle that ordinarily use of the mail or telephone does not *alone* establish basis for jurisdiction.) In *Rambo* the court went on to state that the "exercise of jurisdiction depends on the *nature* of those contacts," and that:

> 'Purposeful availment analysis turns upon whether the defendant contacts are attributable to his own actions or solely to the actions of the plaintiff.... [and generally] requires ... affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 840 (9th Cir.1986)'

*Id.,* 839 F.2d at 1418, 1419–20.

Assuming defendant had purposefully availed itself of the benefits and protections of Utah, the second step of the due process analysis, fair play and substantial justice, would have to be satisfied. In this regard, the Supreme Court has stated that once the purposeful availment requirement is met other factors may be examined "to determine whether the assertion of personal jurisdiction would comport with '*fair play and substantial justice.*' *International Shoe Co. v. Washington,* 326 U.S., [310] at 320, 66 S.Ct., [154] at 160 [90 L.Ed. 95 (1945) ]."

> [T]hus courts ... may evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies," ...

*World–Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 292, 100 S.Ct., at 564, (quoting *Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184–85). Under the aforesaid analysis, the court must evaluate the burden on the defendant. In evaluating the burden on the defendant of litigating in a foreign forum, courts first consider the "quality and nature" of the defendant's contacts with the forum. *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239–40. Further, the court should focus on the economic realities of the relationship between the defendant and the forum. *Frontier* at 1299.

In the case at bar the court rules that neither of the due process requirements is met: defendant could not reasonably anticipate being haled into court in Utah and has not purposefully availed itself of the benefits and protections of Utah; and the assertion of jurisdiction would not comport with fair play and substantial justice.

Defendant had very few contacts with the Utah forum, mostly through mail and telephone. These were neither substantial nor continuous. The "economic realities" in the case at bar are such that the defendant has very few economic ties with the State of Utah. In sum and substance, defendant's contacts with Utah were merely fortuitous due to the fact that the Verhalens resided here for a portion of the year.

Based upon the foregoing, defendant's motion to dismiss for lack of personal jurisdiction is granted. Counsel for defendant is directed to prepare and lodge with the court a form of judgment consistent with this opinion after first complying with local rule 13(e).

IT IS SO ORDERED.