**FAR WEST CAPITAL, INC., and Steamboat Development Corp.**

v.

**Dorothy A. TOWNE and Fleetwood Corporation.**

No. 93–C–0251–S.

United States District Court, D. Utah, C.D.

July 22, 1993.

910

Mary Anne Q. Wood, Gretta C. Spendlove, Anthony B. Quinn, Wood Spendlove & Quinn, Salt Lake City, for plaintiffs.

Richard L. Hill, Hill, Harrison, Hill & Fisher, Provo, UT, Brian N. Benevento, Phillip W. Lear, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION AND ORDER

SAM, District Judge.

This matter is before the Court on defendants Dorothy A. Towne and Fleetwood Corporation's Motion to Dismiss for lack of jurisdiction. Alternatively, defendants have requested a change of venue. A hearing on this motion took place on July 13, 1993. Charles E. Weller, Esq. represented defendant Fleetwood Corporation; Richard L. Hill, Esq. represented defendant Ms. Towne; and Mary Anne Q. Wood, Esq. appeared on

behalf of plaintiffs. The facts underlying the complaint which are relevant to this motion are as follows:

Steamboat Development Corp. is a Utah corporation and is a wholly owned subsidiary of Far West Capital, Inc. (FWC). Steamboat was created for the sole purpose of holding the assets of FWC which relate to the project out of which this dispute has arisen. The parties, in their memoranda, refer to Steamboat and FWC collectively as FWC. This memorandum decision will do the same.

*Facts*

Defendant Dorothy Towne (Towne) is a Nevada resident.[1] Approximately five years ago FWC and Towne began negotiations respecting FWC acquiring the use of Towne's geothermal resources for FWC's power generation activities. The parties considered a joint venture, outright sale of the property and other arrangements. In the Spring of 1991, when it became apparent that the parties would not be able to reach an agreement on the purchase price, they began to negotiate a lease arrangement. To this end defendants engaged the services of Robert Wright, an expert on geothermal land leases and a Utah resident.

All of the face to face negotiations culminating in the contract took place in Nevada or California. It is likewise undisputed that neither Towne nor Fleetwood traveled to Utah for any part of the negotiations process. The only contacts which plaintiff claims defendants had with the state of Utah are limited to telephone calls, faxes and mailings which were part of the negotiations process and which communications originated in Utah, Oregon and Nevada. Plaintiff does not allege that *any* of the extensive face to face negotiations took place in Utah.

On November 11, 1991, plaintiffs allege that negotiations were taking place in San Francisco and were at a critical stage when Ms. Towne demanded $50,000 in exchange for her signature to the Second Consent to Assignment. Plaintiffs paid the money under protest. Plaintiffs allege that the $50,-000 was paid out of the funds received at the closing of the construction loan and deducted out of the development fee paid to FWC, thus "result[ing] in direct and immediate injury to FWC at Salt Lake County." Plaintiffs' Statement of Facts ¶ 11.

In December 1992, the geothermal plants were nearing completion when the finance company required incorporation of a resource trust into the structure of the financing. This required defendants' additional consent. *Id.* at ¶ 15. Plaintiffs' allege that defendants made extortionate demands as conditions to providing such consent.

Finally, plaintiffs allege that on March 4, 1993, defendants demanded a royalties payment which violated the express terms of the parties' agreement and threatened to declare the lease to be in default if the payment was not made.

Plaintiffs filed this lawsuit on March 8, 1993 alleging, among other things, breach of contract, intentional interference with contractual relationships and economic duress.[2] On April 9, 1993 defendants filed this Motion to Dismiss. Defendants move for dismissal on the basis that the Court does not have jurisdiction over the non-resident defendants.

*Analysis*

Plaintiffs bear the burden of demonstrating why the Court should exercise jurisdiction over defendants. However, plaintiffs' burden is relatively light as all plaintiffs need do is make a prima facie showing of a basis for jurisdiction:[3]

---

1. In its recitation of the facts, plaintiffs point out that Ms. Towne has resided in Utah where she worked as a nurse. That fact is irrelevant to the dispute before the Court.

2. On March 12, Plaintiffs obtained a temporary restraining order preventing defendants from declaring them to be in default. Defendants, at that time, appeared without waiving their right to challenge the Court's jurisdiction. On April 15, the Court signed an Order Continuing Temporary Restraining Order pursuant to the parties' stipulation that it be continued until a hearing on Defendants' Motion to Dismiss.

3. The Court is not permitted to inquire into the merits of plaintiffs' claims at this stage of the litigation. Therefore, despite how well-founded those claims may be, the jurisdictional analysis necessarily precedes any consideration of the merits.

The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1417 (10th Cir.1988) (quoting *Behagen v. Amateur Basketball Ass'n of the United States,* 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985) (citations omitted)).

The Court may exercise either "general" or "specific" jurisdiction over a non-resident defendant. The difference between the two types of jurisdiction has been explained by the Utah Supreme Court as follows:

General personal jurisdiction is the concept reflected in a doing business statute, which requires substantial and continuous local activity; specific personal jurisdiction is the concept applicable to a long-arm statute, which requires only the minimum local contacts.... Where a defendant's forum-state activity is extensive, the forum may assert personal jurisdiction on either related or unrelated claims (doing business concept). Where the defendant has only minimum contacts with the forum, personal jurisdiction may be asserted only on claims arising out of the defendant's forum-state activity (long arm or "transaction of business" concept).

*Abbott G.M. Diesel v. Piper Aircraft,* 578 P.2d 850, 853 n. 6 (Utah 1978) (quoting In Personam Jurisdiction in Utah, 1977 Utah L.Rev. 235–36).

Plaintiffs do not allege that there is a basis for the exercise of general jurisdiction over defendants. The focus of the parties' arguments is whether the Court may exercise specific jurisdiction. Utah's Long Arm Statute provides the following analytical basis for determining whether specific jurisdiction is appropriate: (1) identifying defendant's activities in Utah; (2) determining whether a nexus exists between plaintiff's claim and defendant's conduct in Utah; and (3) determining whether the exercise of jurisdiction comports with due process limitations. Utah Code Ann. § 78–27–24.

a. Defendants' activities in the forum state

Utah law requires that a defendant has performed one of the following enumerated acts within the state of Utah before the long arm statute may be applied:

Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

(1) the transaction of any business within this state;

\* \* \* \* \* \*

(3) the causing of any injury within this State whether tortious or by breach of warranty;

Utah Code Ann. § 78–27–24.

■ Utah law defines the "transaction of any business within this state" as "activities of a non-resident person, his agent, or representatives in this state which affect persons or businesses within the state of Utah." Utah Code Ann. § 78–27–23. This is a broad definition which invites liberal application. *Nova Mud Corp. v. Fletcher,* 648 F.Supp. 1123, 1126 (D.Utah 1986). Because defendants' conduct arguably affected persons or businesses within the state of Utah, the Court finds that defendants transacted business within the state as defined by Utah's liberally applied long-arm statute.

■ FWC also alleges that defendants caused tortious injury in the state because $50,000 was allegedly extorted from FWC which corporation is 90% owned by Utahns. However, the Court cannot exercise jurisdiction solely on the basis of financial loss:

[F]inancial loss ... [is an] inadequate link [with the forum state for jurisdictional purposes]. [It] would have been suffered by the plaintiff ... wherever it resided.... To hold to the contrary would allow courts to exercise jurisdiction over all out-of-state defendants provided that the plaintiff resides in [the forum state] and claims a [financial loss]....

*STV International Marketing v. Cannondale Corp.*, 750 F.Supp. 1070, 1076 (D.Utah 1990) (quoting *Arbitron Company v. E.W. Scripps, Inc.*, 559 F.Supp. 400 (S.D.N.Y.1983)). To find this requirement satisfied on the basis of financial loss would

> open a veritable Pandora's Box of litigation subjecting every conceivable prospective defendant involved in an accident with a New York domiciliary to defend actions brought against them in the State of New York.

*Id.* at 1076 n. 14 (quoting *American Eutectic Welding Alloys Sales Co., Inc. v. Dytron Alloys Corp.*, 439 F.2d 428, 434 (2nd Cir. 1971)).

### b. The Nexus requirement

Utah law also requires that the conduct of which plaintiffs complain arises out of defendants' contact with the state. The extortion claim arises out of conduct which occurred entirely out of state. FWC claims that the existence of financial injury within the state creates the necessary nexus. However, such alleged injury does not provide an adequate basis for jurisdiction under Utah's long-arm statute and therefore could not satisfy the nexus requirement. *See* discussion *supra* at 912.

■ Plaintiffs allege that their contract claims arise out of the contacts defendants had with the state. The *Nova Mud* court held that a single phone call to the state of Utah which created an oral contract was sufficient to satisfy the nexus requirement. However, more recently in *STV*, 750 F.Supp. at 1077, the court cautioned:

> [T]he nexus requirement is not met whenever there is creation or breach of a contract with a Utah plaintiff. Nor would the circumstance of presence in Utah by way of correspondence and telephone calls, without more, necessarily be sufficient to satisfy nexus.

In determining whether the nexus requirement is satisfied, the Court must examine the nature of the defendants' contacts with the state. *Rambo*, 839 F.2d at 1418 ("The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards.") The parties agree that the contract at issue involved extensive negotiations which took place over at least a three year period of time.[4] Towards the end of that three-year time period a limited number of communications by telephone, facsimile and mail took place—originating sometimes from Utah and sometimes from Nevada. Plaintiffs have specifically listed seven contacts which defendants or their representatives had with the state. None of those contacts were face to face. Virtually all of the contacts mentioned are facsimile transmissions, two of which were followed up or preceded by phone calls.

The Court concludes that the nature of such contacts when compared to the three year process of negotiations, much of which took place in person, is insufficient to satisfy the nexus requirement of Utah's long arm statute. Even if the nexus requirement was satisfied, the Court concludes the exercise of jurisdiction would violate due process.

### c. Due process limitations

This final step in specific jurisdiction analysis involves a two-step process of determining whether the exercise of jurisdiction is consistent with due process requirements. The first inquiry is whether the defendant purposefully availed himself of doing business in the forum state. The second inquiry is whether the exercise of jurisdiction satis-

---

4. Plaintiffs, in their statement of facts, state: "About five years ago FWC and Towne began negotiations respecting FWC acquiring the use of Towne's geothermal resources for FWC's power generation activities." Plaintiffs' Response to Defendants' Motion to Dismiss, p. ii, ¶ 4. Apparently negotiations culminated in a lease entered into approximately three years later on May 31, 1991. Affidavit of Dorothy A. Towne, ¶ 2.

fies the demands of fair play and substantial justice.

### (1) *Purposeful availment*

The policy behind this aspect of due process analysis is "to ensure that the defendant will be subjected to suit only in those instances where he should reasonably anticipate out-of-state litigation." *STV,* 750 F.Supp. at 1077. The defendants' contacts with the state must have been "such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). The mere fact that a nonresident enters into a contract with a resident of the forum is an insufficient basis for the exercise of jurisdiction. *Nicholas v. Buchanan,* 806 F.2d 305, 307 (1st Cir.1986). One factor which is indicative of whether the nonresident has purposefully availed himself of the privileges and protections of the laws of the forum state requires inquiry into which party initiated the formation of the relationship between the resident and the nonresident.

> Purposeful availment analysis turns upon whether the defendant contacts are attributable to his own actions or solely to the actions of the plaintiff. . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.

*STV* 750 F.Supp. at 1078 (quoting *Rambo Insurance Co.,* 839 F.2d 1415, 1418–19) (citations omitted).

**5.** Further support for this fact is found in the parties' pleadings:

> That FAR WEST CAPITAL, INC., made it known to DOROTHY A. TOWNE that they wanted to develop her property and build two large electricity generating plants on her property to sell to SIERRA PACIFIC POWER COMPANY, a Nevada utility.

Reply Affidavit of Jay Woodworth, ¶ 5.

> That on May 31, 1991, FLEETWOOD sub-let Affiant's property to FAR WEST CAPITAL, INC., after representatives of FAR WEST solicited the Sub–Lease, which was likewise signed in Nevada.

Affidavit of Dorothy A. Towne, ¶ 7.

At oral argument the parties agreed that the contact leading to the formation of the contract at issue was initiated by plaintiffs and that the solicitation occurred in Nevada.[5] Defendants have never advertised or solicited goods or services in Utah. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, p. 6. "All contracts, leases and subleases . . . were negotiated and signed by FWC, STEAMBOAT, TOWNE and FLEETWOOD in Nevada." *Id.* at 3. Defendants claim that they "have not deliberately reached out beyond their state's residence to do an act in Utah, let alone to transact business on (sic) Utah." *Id.* at 14. Most importantly defendants state "Plaintiffs, FWC and STEAMBOAT solicited defendants business in Nevada." (cite) Plaintiffs maintain that defendants purposefully availed themselves of the privileges and protections of the Utah laws, stating "[n]othing could be more purposeful than Towne's statement to a Utah company in her May 16, 1988 letter that '[i]f there is anything you wish to discuss, . . . please contact me.'" As further support for the exercise of jurisdiction, plaintiffs add:

> At all times Defendants were on notice that they were dealing with a Utah enterprise because all corporate decision making authority is vested in Utah, because contract documents indicate that all relevant notices and payments must be sent to Utah, and because the drafts and final forms of agreement between the parties clearly indicate in the beginning paragraphs that Plaintiffs are Utah corporations. As in *Brown* the present litigation 'result[s] from alleged injuries which arose out of and relate to those activities.'

> It was the Plaintiffs who were persistent and purposeful in their efforts to initiate and close a deal on extremely valuable Nevada geothermal rights that stand to make them millions of dollars generated out of Nevada assets. They were the initiating power behind this transaction from beginning to the present.

Reply to Response to Defendants' Motion to Dismiss, p. 5.

> [Towne] did not institute the lease or sublease. Her calls and messages to Utah had to do with a joint venture and a possible sale of her Nevada property.

Reply to Response to Defendants' Motion to Dismiss, pp. 8–9.

Defendants reached out from the State of Nevada and created a continuing relationship and obligations with residents of Utah. Defendants accomplished this connection through their deliberate and purposeful solicitation and encouragement in making an agreement with Plaintiffs respecting the geothermal resources.

Plaintiffs' Response to Defendants' Motion to Dismiss, pp. 8–9 (citations omitted). To adopt plaintiffs' reasoning would essentially embrace a rule that the mere formation of a contract with a resident of another state automatically subjects the nonresident to the jurisdiction of that other state. Such a rule would effectively eviscerate the due process requirement.

All of the parties' meaningful negotiations took place out of state. There was no face-to-face negotiating in the state of Utah. The extent of defendants contact with the state are a dozen faxes, mailings and telephone calls—many of which were initiated by plaintiffs. The Court concludes that defendants did not purposefully avail themselves of the privilege and protections offered by Utah law.

(2) *Fair play and substantial justice*

■ With regard to "fair play and substantial justice", the Supreme Court has stated:

[C]ourts ... may evaluate 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,'....

*Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 292, 100 S.Ct. at 564).

■ Defendants have had very limited contact with Utah. Plaintiffs' itemization of defendants' contacts is limited to seven contacts over a period of two months out of a negotiations process which lasted at least three years. These contacts were neither substantial nor continuous. As the *STV* court stated, "The 'economic realities' in the case at bar are such that the defendant has very few economic ties with the State of Utah." *STV,* 750 F.Supp. at 1078. Therefore, the state has minimal, if any, interest in adjudicating this dispute. On the other hand, Nevada's interest in the outcome of this case appears to be significant. The land which is the subject of the lease and the two geothermal plants are located in Nevada. Any income to the parties arising out of the lease is generated in Nevada. Plaintiffs, FWC and Steamboat solicited defendants' business in Nevada. The contracts were signed in Nevada and provide for Nevada law to govern disputes of the parties. *If* there was extortion, fraud and duress by defendants, these torts also could be criminal and of great concern to the Nevada District Attorney in the county where they allegedly occurred.[6] While Nevada is clearly more convenient for the defendants, plaintiffs chose to negotiate the lease in Nevada despite any inconvenience and cannot now complain to be unduly inconvenienced by having to litigate their disputes there as well.

The Court concludes that the exercise of jurisdiction in this case would not comport with fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Accordingly, the Court declines to exercise jurisdiction in this matter and dismisses plaintiff's complaint.

It is so ORDERED.

---

**6.** A state has a special interest in exercising personal jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter and against which it attempts to afford protection by providing that a tort feasor shall be liable for damages which are the proximate result of his tort.
*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).