**John C. BECK, dba Asian Business Information, Plaintiff,**

v.

**Bijoux D'AMOUR S.A., and Does 1–10, Defendant.**

No. 94–C–0709–S.

United States District Court, D. Utah, Central Division.

March 11, 1996.

---

Joel G. Momberger, J. Mark Gibb, Durham Evans Jones & Pinegar, Salt Lake City, Utah, for Plaintiff.

Mary Anne Q. Wood, Wood Quinn & Crapo, Salt Lake City, Utah, Charles A. Laff, Judith L. Grubner, Laff Whitesel Conte & Saret, Chicago, Illinois, for Defendant.

## MEMORANDUM DECISION

SAM, District Judge.

Before the court is the motion of defendant Bijoux D'Amour, S.A., to dismiss for lack of personal jurisdiction.

## BACKGROUND

This diversity action results from a business arrangement between plaintiff John C. Beck, dba Asian Business Information, a resident of Utah, and defendant, a corporation formed under the laws of Thailand and headquartered in Bangkok. The undisputed facts reveal that plaintiff, an international business consultant, and Mr. Santi Ho, a representative of defendant, met while seated next to each other on an airplane flight from Taiwan to Bangkok. Shortly thereafter, the parties formed a business relationship, and plaintiff performed a service for defendant for which defendant compensated plaintiff.

Subsequently, according to plaintiff, as a result of his initial work, defendant agreed to hire plaintiff for one year to study the feasibility of defendant's entry into the North American market. Plaintiff was to be paid $150,000 and up to $100,000 in expenses for his services. Plaintiff claims that, to perform this contract with defendant, plaintiff had to forego other consulting opportunities and leave his position at Brigham Young University's Marriott School of Management.

Plaintiff contends he began work for defendant, according to the terms of their agreement, for which he received periodic compensation. However, defendant purportedly later breached this agreement.

Plaintiff brought suit based upon this second consulting agreement with defendant, alleging breach of contract, promissory estoppel, implied in fact contract, contract implied in law, breach of the covenant of good faith and fair dealing, and conversion. Defendant now moves to dismiss for lack of personal jurisdiction. Defendant argues its contacts with Utah are so few, it would offend "traditional notions of fair play and substantial justice" for it to be expected to defend itself in this forum. It is undisputed that defendant owns no real estate in Utah, sells no products here, and has done no business in Utah other than that entailed in its transaction with plaintiff. Accordingly, defendant contends there is no basis for this court to exercise jurisdiction.

## STANDARDS FOR DISMISSAL

■ In adjudicating a motion to dismiss for lack of personal jurisdiction, the court notes that

> [t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir.1990) (quoting *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985)). To make a prima facie showing of personal jurisdiction, a plaintiff must demonstrate that "jurisdiction is legitimate under the laws of the forum state *and* that the

exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir.1995) (*"Far West II "*); *accord Kennedy*, 919 F.2d at 128. The court must, thus, examine whether the exercise of personal jurisdiction over defendant comports with state law and the requirements of due process as set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny.

## ANALYSIS

### I.  *State Law*

■ Utah courts may exercise general or specific jurisdiction over a non-resident defendant. As the Utah Supreme Court has explained:

> General personal jurisdiction is the concept reflected in a doing business statute, which requires substantial and continuous local activity; specific personal jurisdiction is the concept applicable to a long-arm statute, which requires only the minimum local contacts.... Where a defendant's forum-state activity is extensive, the forum may assert personal jurisdiction on either related or unrelated claims (doing business concept). Where the defendant has only minimum contacts with the forum, personal jurisdiction may be asserted only *on claims arising out* of the defendant's forum-state activity (long-arm or "transaction of business" concept).

*Far West Capital, Inc. v. Towne*, 828 F.Supp. 909, 912 (D.Utah 1993) (*"Far West I"*) (quoting *Abbott G.M. Diesel v. Piper Aircraft*, 578 P.2d 850, 853 n. 6 (Utah 1978)), *aff'd*, 46 F.3d 1071 (10th Cir.1995). Plaintiff contends there is a basis for the exercise of both general and specific jurisdiction over defendant.

### A.  *General Jurisdiction*

■ It is undisputed that defendant owns no property in Utah, sells no products here, is not licensed to do business in Utah, has no Utah telephone listing, post office box, agents or employees, and has never advertised here. In fact, Ho, defendant's agent,

came to Utah only once, meeting with plaintiff after attending a business meeting on matters unrelated to plaintiff. Plaintiff contends defendant's payments from its Thailand bank accounts to plaintiff's Utah bank accounts demonstrate defendant's intention to avail itself of the benefits of Utah laws. However, the unilateral activity of plaintiff in choosing to have his payments sent to Utah is not sufficient evidence of defendant's purposeful availment for purposes of personal jurisdiction. *See Far West II*, 46 F.3d at 1075–76. The court cannot conclude defendant's contacts with Utah reflect "substantial and continuous local activity." Thus, the court can find no basis for general jurisdiction over defendant.

### B. *Specific Jurisdiction*

■ The court may determine the exercise of specific jurisdiction is appropriate if plaintiff demonstrates: "(1) the defendant conducted certain enumerated activities in Utah, and (2) there is a nexus between plaintiff's claim and defendant's conduct." *Far West II*, 46 F.3d at 1074; *see* Utah Code Ann. § 78–27–24 (Supp.1995) (Utah's long-arm statute); *accord Far West I*, 828 F.Supp. at 912.

First, defendant must have performed at least one of certain activities specified in Utah's long-arm statute. In the present case, the activities implicated are: (1) the transaction of business within Utah, and (2) the causing of any injury within Utah. *See* Utah Code Ann. § 78–27–24(1) and (3) (Supp. 1995).

■ Under Utah law, the transaction of business is defined as "'activities of a non-resident person, his agent, or representatives in this state which affect persons or businesses within the state of Utah.'" *Far West I*, 828 F.Supp. at 912 (citing Utah Code Ann. § 78–27–23). In light of this "broad definition which invites liberal application," the court concludes defendant transacted business in Utah within the meaning of the long-arm statute. *Id.; see also STV Int'l Mktg. v. Cannondale Corp.*, 750 F.Supp. 1070, 1075 (D.Utah 1990) ("[A] person may transact business within the state despite an absence of physical presence in Utah.").

■ Next, plaintiff claims defendant has caused injury within Utah because defendant's failure to pay him for his services constitutes conversion, the consequences of which plaintiff is suffering in Utah. However, the tort of conversion and its corresponding injury take place where the contested funds are located, not where plaintiff resides. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1508 (10th Cir.1995). In this action, because the contested funds are located in Thailand, the alleged conversion and any resulting injury are also located in Thailand. Thus, the fact that plaintiff "may be economically impacted" in Utah, "simply because he lives there, is insufficient to establish personal jurisdiction." *Id.* Therefore, any specific jurisdiction must be based solely upon defendant's transaction of business within Utah.

■ Second, to determine whether plaintiff has met the nexus requirement relative to defendant's transaction of business within the state, the court "must examine the nature of the defendants' contacts with the state." *Far West I*, 828 F.Supp. at 913. This court recently interpreted the nexus factor as sufficient to bestow jurisdiction "only where a non-resident defendant has engaged in some conduct within the state and the plaintiff's claims against the defendant specifically 'arise from' that conduct." *Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F.Supp. 608, 617–18 (D.Utah 1995). However, "the nexus requirement is not met whenever there is creation or breach of a contract with a Utah plaintiff. Nor would the circumstance of presence in Utah by way of correspondence and telephone calls, without more, necessarily be sufficient to satisfy nexus." *STV*, 750 F.Supp. at 1077; *see also Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir.1988) ("The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards.").

■ In the instant action, plaintiff contends an adequate nexus exists between his claims and defendant's conduct because defendant's representatives negotiated with him in Utah in person and by telephone,

plaintiff's services were performed mostly in Utah, and the harm resulting from defendant's breach was felt by plaintiff in Utah. The record reveals that defendant's representative travelled to Utah only once, meeting with plaintiff for a few hours of the four days he was in the state. Defendant's other contacts with plaintiff consisted of a few telephone calls and facsimile transmissions. Moreover, it appears the significant and substantive negotiations which culminated in the contract between the parties took place mostly in Thailand, not in Utah. Furthermore, rather than working only in Utah, plaintiff apparently travelled to other states and Japan in the process of performing services for defendant. Finally, any financial harm plaintiff has suffered in Utah as a result of defendant's purported breach of contract does not establish nexus. *See STV*, 750 F.Supp. at 1075–76. Under these circumstances, the court concludes the nature of defendant's contacts with Utah is insufficient to satisfy the long-arm statute's nexus requirement.

The court is, thus, of the opinion that the exercise of personal jurisdiction over defendant would not comport with state law.

## II. *Federal Due Process*

■■■■■■ "A federal court sitting in diversity 'may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum State.'" *Far West II*, 46 F.3d at 1074 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)). Such contacts "are sufficient if the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). In determining whether a defendant has purposefully established minimum contacts with a forum state, the court must consider " 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* at 1075 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985)). In addition, "[t]he de-

fendant's contacts with the forum state must also be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1074 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Factors to consider in determining fairness include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies...." *Far West I*, 828 F.Supp. at 915 (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184). Plaintiff claims that, by contacting him in Utah, defendant has purposefully availed itself of the benefits and privileges of Utah law and, thus, should expect to be haled into court in this forum.

■■■ In the present case, defendant's business relationship with plaintiff arose from a chance meeting on an airplane in Asia. The fact that plaintiff happened to be a resident of Utah was of no consequence to defendant. Moreover, in the early stages of the relationship, it appears plaintiff was actually the one to pursue defendant, proffering an initial proposal that defendant did not solicit. Only after the business relationship was formed, due to happenstance, did defendant's contacts with Utah begin. It, therefore, appears that, rather than reaching out unilaterally and purposefully to a Utah resident or to the State of Utah, to take advantage of its laws, defendant simply followed plaintiff to his residence, which happened to be in Utah. Finally, the agreement at issue in this case was apparently principally negotiated in Thailand, created in Thailand, and breached in Thailand. The agreement contains neither a clause specifying Utah as the site of performance nor is Utah law designated to govern future disputes. In short, as the court found in *Far West II*, "there is no indication that Utah had anything but a fortuitous role in the parties' past dealing or would have any role in their continuing relationship." *Far West II*, 46 F.3d at 1080.

Under these circumstances, the court is of the opinion that defendant has neither had sufficient minimum contacts with this forum

nor purposefully availed itself of the benefits of Utah law for purposes of establishing jurisdiction. Furthermore, the court concludes defendant's contacts with Utah are so tenuous that it would not comport with traditional principles of fairness or due process to hale defendant into court in this forum.

## CONCLUSION

Because the court has determined that exercising personal jurisdiction over defendant would not comport with state law or federal due process considerations, the court concludes plaintiff has failed to establish a prima facie showing that jurisdiction is proper. Accordingly, the court hereby GRANTS defendant's motion.

It is so ordered.