**PURCO FLEET SERVICES, INC., Plaintiff,**

v.

**Michael TOWERS, Kim Towers, Andrea Mahoney and Fleet Financial Corporation, Defendants.**

**No. Civ. 2:98CV786G.**

United States District Court, D. Utah, Central Division.

March 9, 1999.

Stephen K. Christiansen and Lisa R. Petersen, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, for plaintiff.

Russell C. Fericks, Richards, Brandt, Miller & Nelson, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on December 18, 1998, pursuant to defendants' Motions to Dismiss. Plaintiff Pur-Co Fleet Services, Inc. (PurCo) was represented by Stephen K. Christiansen and Lisa R. Petersen. The individual defendants and corporate defendant Fleet Financial Corporation (Fleet) were represented by Russell C. Fericks. The parties submitted memoranda and presented oral argument, after which the motions were submitted for decision and the court took the matter under advisement.

Being now fully advised, the court enters its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Fleet and PurCo directly compete in the automobile risk management business. Among other things, the companies provide damage claim services for car rental companies. Fleet is domiciled in Florida and PurCo is domiciled in Utah. From 1991 to 1993, David Purinton was employed by Fleet. During most of that time, Mr. Purinton lived in Utah and worked from an office in his home. In 1993, Mr. Purinton broke off from Fleet and established PurCo. In 1997, Fleet registered the name "PurCo" as a "domain name"[1] to be used as an Internet address.

---

1. The Ninth Circuit recently explained that, "[e]very web site on the Internet has an identifier called a 'domain name.' The domain name often consists of a person's name or a company's name or trademark. For example, Pepsi has a web page with a web site domain name ... Pepsi.com." *Panavision International, L.P. v. Toeppen,* 141 F.3d 1316, 1318 (9th Cir.1998). Entities may register with an or-

ganization called InterNIC Registration Services (InterNIC) any name which has not previously been registered. Such registration gives the registering entity the exclusive right to use the domain name as an identifier for an Internet web site. InterNIC is a cooperative activity between the United States Government and the private entity Network Solutions, Inc.

Fleet then activated the domain name and patched it to the existing Fleet web page. Thus, for the period of time that the domain name was active, an Internet user who entered "purco.com" or certain variations thereof would have been connected to Fleet's web page. Fleet's web page provided information about Fleet but made no mention of PurCo. The web page enabled Internet users to communicate with Fleet through e-mail.

Plaintiff has filed affidavits to the effect that defendant Michael Towers, President of Fleet, made multiple visits to Utah and that he was the person who decided to use the PurCo name as an address for the Fleet web page. Plaintiff also asserts that Mr. Towers does not keep separate corporate records and that he commingles corporate and personal assets, suggesting that Fleet is the alter ego of Mr. Towers. According to Mr. Purinton's affidavit, defendant Kim Towers and defendant Andrea Mahoney had repeated contacts with Mr. Purinton, through telephone, facsimile and/or e-mail, while he resided in Utah. Ms. Towers, as head of Fleet's legal department, allegedly managed several law suits in Utah, and Ms. Mahoney allegedly conceived the idea of using the PurCo name to access Fleet's web page. In a further affidavit provided by plaintiff, the assertion is made that Mr. Towers individually and as President of Fleet admitted that the reason he used the PurCo name as a gateway to the Fleet web site was that "he wanted to injure PurCo." [2] It is further asserted by way of affidavit that on October 28, 1997, Jennifer Turner, a Utah resident and employee of PurCo, accessed Fleet's web site through the domain name "purco.com" and inquired about Fleet's relation to PurCo. Mr. Towers, who was apparently unaware of Ms. Turner's affiliation with PurCo, set forth an explanation about Fleet's business by·return e-mail and offered to have a marketing representative make further contact.

Fleet has also attempted by communication into this District to bargain away whatever rights it has in the domain name "purco.com" and variations thereof in exchange for part of a cash settlement from PurCo involving this and other pending litigation.[3]

In October 1998, PurCo filed a Complaint in the United States District Court for the District of Utah against Fleet and the individual defendants. Plaintiff alleges trademark infringement, unfair competition, dilution and tortious interference claims. Defendants have filed Motions to Dismiss based on Rule 12(b)(2), Fed.R.Civ. Proc., for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim for relief.

### ANALYSIS

### I. PERSONAL JURISDICTION

In determining whether personal jurisdiction exists, plaintiff need only present a prima facie showing.[4] Furthermore, in determining the sufficiency of such a showing, the court resolves all factual disputes in favor of the plaintiff. In this regard, the Tenth Circuit has said:

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary pre-

2. Brown Aff. at ¶ 3—Ex. C, Pl's Mem. Opp'n Mot. Dismiss.

3. Letters from Fleet and Counsel—Ex. D, Pl's Mem. Opp'n Mot. Dismiss.

4. In *STV International Mktg. v. Cannondale Corp.*, this court noted the following: "Although plaintiff bears the burden of establishing personal jurisdiction over the defendant, only a prima facie showing need be made when a motion to dismiss for lack of jurisdiction is presented. *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) Thus, at this stage of the proceedings the plaintiff's burden is relatively light, and the court's inquiry is not finally determinative of the matter." 750 F.Supp. 1070, 1072–73 (D.Utah 1990).

sentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations must be accepted as true.

*Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995) (citations omitted). Accord, *Patriot Systems, Inc. v. C–Cubed Corp., et al.,* 21 F.Supp.2d 1318, 1320 (D.Utah 1998) (Sam, C.J.).

Personal jurisdiction issues with respect to Fleet and the individual defendants will be considered separately.

### A. *Specific Jurisdiction Over Entities in Utah[5]*

█ The Tenth Circuit has set forth the following criteria for determining specific jurisdiction in Utah:

In Utah, jurisdiction is appropriate only if plaintiff establishes that: (1) the defendant conducted certain enumerated activities in Utah, and (2) there is a nexus between plaintiff's claim and defendant's conduct.

*Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir.1995), *citing* Utah Code Ann. § 78–27–24 (1998). In addition, plaintiff must establish the existence of " 'minimum contacts between defendant and the forum state' " such that "maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.' " *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

**5.** PurCo suggests that Fleet is also subject to general jurisdiction. To become subject to general jurisdiction in Utah, an entity's contacts with the state must be so "substantial and continuous" that the defendant becomes "amenable to suit in this jurisdiction for any purpose." *STV International* at 1073. This court does not reach considerations applicable to general jurisdiction since specific jurisdiction is found to exist.

### 1. Enumerated Activities and Nexus

█ Plaintiff argues that Fleet has engaged in the following two activities enumerated in the Utah statute:

(1) the transaction of any business within this state;

\*        \*        \*        \*        \*        \*

(3) the causing of injury within this state whether tortious or by breach of warranty;

Utah Code Ann. § 78–27–24 (1998). The Supreme Court of Utah has ruled that this statute was intended to be as broad as is constitutionally permissible, and that its reach is entitled to the widest possible construction.[6]

Utah's Long–Arm Statute defines the transaction of business broadly, as:

activities of a non-resident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah.

Utah Code Ann. § 78–27–23 (1998). PurCo argues that the registration, establishment, and use of the web site is the very heart of this case and that such constitutes the transaction of business within the meaning of the Utah statute.

Chief Judge Sam of this court has declined to exercise jurisdiction where the web site at issue did not allow for communication between Internet users and the company that had posted the site and was "a passive advertisement which merely provide[d] information to those interested in it." *Patriot Systems,* 21 F.Supp.2d at 1324. However, where a defendant's web page "enable(s) web users to contact the defendant via electronic mail, thus permitting conversations between the defendant

**6.** *Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106, 1110 (Utah 1985) (Utah long-arm jurisdiction "must be extended to the fullest extent allowed by due process of law"). *See also Brown v. Carnes Corp.,* 611 P.2d 378, 380 (Utah 1980). Because this court finds that defendants engaged in the transaction of business in Utah by reason of web-site contacts, it is unnecessary to discuss the other enumerated activity, causation of injury.

and potential customers," jurisdiction has been found to exist. *Vitullo v. Velocity Powerboats, Inc.,* 1998 WL 246152 (N.D.Ill.1998). In *Panavision International, L.P. v. Toeppen,* the Ninth Circuit faced a factual scenario similar to the unrebutted allegations in the present case. 141 F.3d 1316, 1319 (9th Cir.1998). Panavision International, L.P. sued Toeppen, who had registered the domain name "Panavision" and established a web site at "panavision.com". The Ninth Circuit noted that "simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to the jurisdiction of another," unless the defendant did "something more." *Id.* at 1322. The court went on to hold that the defendant's "purpose of extorting money from Panavision" constituted the requisite "something more."[7]

In the case at bar, defendants engaged in various acts enumerated in the recitation of facts which amount to the transaction of business. In this regard, plaintiff has shown that Fleet used its web site to solicit business from a Utah resident. Plaintiff has also shown that Fleet attempted to obtain a cash settlement in exchange for relinquishment of the PurCo domain name. This assertion and the documents in support have not been refuted by defendants.[8]

Based upon the foregoing, this court rules that Fleet's establishment and use of its web site for the purposes enumerated constituted the transaction of business in Utah. Furthermore, it is clear to the court that plaintiff's claims arise out of Fleet's use of the "purco.com" domain name in connection with its web page and therefore the nexus requirement of the Utah long-arm statute is satisfied.

### 2. Due Process Limitations

The last step in the long-arm statute analysis is to determine whether the assertion of jurisdiction comports with federal due process limitations. The Supreme Court has described the basic limitation as follows:

'The constitutional touchstone' of the determination whether an exercise of jurisdiction is consistent with due process 'remains whether the defendant purposefully established "minimum contacts" in the forum state.'

*Asahi Metal Industry v. Superior Court,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

In this case, Fleet's contacts of a commercial nature with Utah through its web site served to "purposefully avail" Fleet of the laws of Utah. The exercise of jurisdiction over Fleet comports with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

### B. *Specific Jurisdiction over Individuals in Utah*

■ The individual defendants in this case, Mr. Towers, Ms. Towers, and Ms. Mahoney, argue that even if the court has jurisdiction over Fleet, the action should be dismissed as against them. Plaintiff asserts that under the Supreme Court's holding in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the individual defendants are subject to this

---

7. In the case at bar, plaintiff alleges that defendants registered the PurCo name to prevent usage of the that name by plaintiff and "to extort money." Compl. at ¶ 17. *See* footnotes 2 and 3, *supra.*

8. Defendants claim that the court should not consider this evidence because of Rule 408, Fed.R.Evid., which provides: "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." However, in this context, it is submitted for the purpose of supporting the exercise of jurisdiction.

court's jurisdiction because they committed intentional torts against a Utah corporation.[9] In *Far West Capital,* the 10th Circuit examined *Calder* and its progeny and ruled that the exercise of personal jurisdiction requires an examination by the court of tortious contacts by the out-of-state defendant. The court said:

> the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws.

46 F.3d at 1079–80.

It is manifest in this case from the facts set forth above—which for purposes of this motion are resolved in favor of plaintiff—that the individual defendants had sufficient contacts so that a fact finder could determine the commission of the intentional torts alleged.

## II. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

■ Defendants contend that plaintiff's trademark dilution and related claims should be dismissed because plaintiff has failed to allege a "commercial use" of the PurCo name.[10]

In *Panavision,* the Ninth Circuit held that registering a company's trademark as a domain name for the purpose of extort-

ing money from the company constitutes a "commercial use." 141 F.3d at 1325. Also, in *Intermatic v. Toeppen,* the court found that Toeppen's intention to arbitrage the 'intermatic.com' domain name constituted a "commercial use." 947 F.Supp. 1227, 1230 (N.D.Ill.1996). Similarly, commercial use is asserted in the case at bar. Here, in uncontested allegations and submissions, plaintiff claims that defendants registered the PurCo name as a domain name and posted a web site using that name to injure plaintiff and to extort money from plaintiff. Further, the web site was used in a commercial way in communications which linked the name with Fleet's web page.

■ Defendants also contend that Count IV, plaintiff's tortious interference claim, should be dismissed because plaintiff has failed to allege the existence of a present contract or relationship. Plaintiff contends that its references to "current and potential customer[s]" that have been or may be confused by Defendants' use of the PurCo domain name satisfy this requirement. Compl. at ¶¶ 13–15. However, Judge Winder of this court has pointed out that under Utah law, in pleading a claim for interference with contractual relations,

> [A] plaintiff cannot rest on conclusory allegations that it has existing or potential economic relations. . . . [Rather, a plaintiff must] allege facts showing either an existing contract or business relationship with a third party, or a potential contract or business opportunity with a third party or identifiable class of persons.

9. In *Calder,* two Florida newspaper reporters who wrote allegedly defamatory material about a California resident were found to have availed themselves of California's jurisdiction. Plaintiff argues that because several of Fleet's alleged torts were perpetrated by Mr. Towers and other individuals, those individuals have subjected themselves to Utah's jurisdiction.

10. The Federal Trademark Dilution Act provides: "The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection." 15 U.S.C. § 1125(c) (1998).

**1326**

*Proctor & Gamble Co. v. Haugen,* 947 F.Supp. 1551, 1556–57 (D.Utah 1996). In this regard, the Supreme Court of Utah in *St. Benedict's Dev. v. St. Benedict's Hosp.,* held that a claim for interference with present contractual relations did not lie where "[t]here [was] no allegation in the complaint that any existing sublease between the development company and its tenants was breached or that the performance under any of those subleases was in any way impaired by defendants' actions." 811 P.2d 194, 201 (Utah 1991). Essentially the same deficiency in pleading exists in this case.

Based upon the foregoing, it is hereby

ORDERED, that the motions of defendants to dismiss for lack of personal jurisdiction are DENIED; it is

FURTHER ORDERED, that the motions of defendants to dismiss Counts I, II and III of plaintiff's Complaint are DENIED; it is

FURTHER ORDERED, that the motions of defendants to dismiss Count IV of plaintiff's Complaint are GRANTED, without prejudice, with leave to amend within twenty days from the date of this order.