**TECH HEADS, INC., Plaintiff,**

v.

**DESKTOP SERVICE CENTER, INC., Defendant.**

**No. CV–99–1581–ST.**

United States District Court,
D. Oregon.

July 11, 2000.

David S. D'Ascenzo, Kolish Hartwell Dickinson McCormack & Heuser PC, Portland, OR, for Plaintiff.

John D. Ostrander, Bonaparte, Elliott, Ostrander & Preston, PC, Portland, OR, for Defendant.

## OPINION AND ORDER

STEWART, United States Magistrate Judge.

### *INTRODUCTION*

Plaintiff, Tech Heads Inc. ("Tech Heads"), brings this action against defendant, Desktop Service Center, Inc. ("Desktop"), seeking monetary damages, injunctive, and declaratory relief regarding Desktop's use of the service marks TEC-HEAD, TECH HEADS, and TECH-HEADS (collectively, the "Tech Heads marks"). Tech Heads alleges claims for trademark infringement under the Lanham Act, 15 USC §§ 1051–1127 (First Claim for Relief), service mark infringement under Oregon Revised Statute ("ORS") 647.095 and 647.105 and Oregon common law (Second Claim for Relief), service mark dilution under ORS 647.107 and Oregon common law (Third Claim for Relief), and unfair competition under Oregon common law (Fourth Claim for Relief).

This court has federal question jurisdiction over the Lanham Act claim under 28 USC § 1331 and supplemental jurisdiction over the state law claims under 28 USC § 1367. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

After allowing Tech Heads additional time to complete discovery regarding Desktop's contacts with Oregon, Desktop's Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2) (docket # 4) is now before the court. For the reasons stated below, that motion is denied.

## STANDARDS

Under FRCP 12(b)(2), a defendant may move for dismissal on the grounds that the court lacks personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995); *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 (9th Cir. 1993), citing *Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). When a court does not conduct an evidentiary hearing, but makes its jurisdictional decision based on pleadings and affidavits, the plaintiff is required merely to make a *prima facie* showing of personal jurisdiction to defeat a motion to dismiss. *Data Disc,* 557 F.2d at 1285. That is, plaintiff need only demonstrate facts that if true, would support jurisdiction over the defendant. *Ballard,* 65 F.3d at 1498.

Personal jurisdiction is proper only if the forum state's long-arm statute confers personal jurisdiction over the nonresident defendant and the exercise of jurisdiction comports with federal due process. *Fireman's Fund Ins. Co. v. National Bank of Coops.,* 103 F.3d 888, 893 (9th Cir.1996); *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1404–05 (9th Cir.1994), *cert. denied,* 514 U.S. 1004, 115 S.Ct. 1314, 131 L.Ed.2d 196 (1995). Oregon's long arm statute, Oregon Rule of Civil Procedure ("ORCP") 4, extends personal jurisdiction to the extent permitted by federal due process. *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 (9th Cir.1990).

## JURISDICTIONAL FACTS

### I. *Tech Heads*

Tech Heads is an Oregon corporation with its principal place of business in Lake Oswego, Oregon. It is in the business of providing, among other things, computer-related services, including installation and maintenance of computer hardware, consulting, and training. Since at least August 1995, Tech Heads has advertised and performed its services in Oregon and in interstate commerce under the service marks TECHEADS and TECH HEADS. Since then, Tech Heads has continuously used the Tech Heads marks in connection with these services in Oregon and in interstate commerce.

Tech Heads has advertised its services in interstate commerce, including on its Internet Web site at www.techeads.com, since at least early 1996. It has expended substantial time, effort, and money advertising and promoting the Tech Heads marks in connection with its services. As a result of these efforts, customers of such services in the state of Oregon and elsewhere associate the marks with Tech Heads and Tech Heads has therefore acquired valuable goodwill in connection with its services offered under the Tech Heads marks.

On September 30, 1997, the Corporation Division of the State of Oregon granted Tech Heads the Oregon Service mark Registration No. S–31907 for the mark TECH HEADS based on its computer consultation and setup business. That registration is currently valid.

### II. *Desktop*

Desktop is a Virginia corporation with its principal place of business in Richmond, Virginia. It offers computer-related services including the recruitment and training of individuals with computer operational and consulting skills. Desktop has no physical presence in Oregon, is not registered to conduct business in Oregon, and has no registered agents, employees, or sales representatives in Oregon. It has never received a franchise inquiry from

Oregon and has never offered a franchise to any Oregon resident or corporation. Desktop asserts that over 95% of its business is in Virginia, "with the remaining business in the neighboring states of Maryland and North Carolina and the District of Columbia." Affidavit of Philise R. Conein, ¶ 4. Desktop "has conducted no business of any type at any time in the state of Oregon or further west than the western border of the state of Virginia." *Id.*

Desktop uses the term TECHEAD as a purported service mark in connection with its services, which are identical or similar to Tech Heads' services, and also has a class of consumers similar or identical to Tech Heads' class of consumers. Desktop uses the term TECHEAD on its Internet Web site, www.techead.com, and also owns the Internet domain name "techead.net." On December 23, 1997, Desktop filed an application to register the mark TECHEAD with the United States Patent and Service Mark Office. On March 2, 1999, the mark was registered as U.S. Reg. No. 2,228,163.

Desktop's Internet Web site is comprised of staffing, training, and "web and multimedia development and design" sections. In terms of "staffing," Desktop acts as an intermediary in finding employment in the Virginia area for prospective job-seekers and seeks to find qualified employees for businesses. It screens, interviews, and enters into agreements with individuals submitting resumes to the Web site and claims it has received over 500 resumes. Desktop's screening and testing procedures appear to vary depending upon the location and the individual's desired position. For example, testing involves *portfolio review for graphic design and* multimedia candidates, and when applica-

ble, computer-testing of graphics and design skills with a recruiter. Programming and Web design candidates undergo off-site testing via the Internet.

Potential employers are precluded from directly contacting individuals because the individuals are identified only by code names on Desktop's web site. Therefore, interviews or any other contact with these individuals can be arranged only by Desktop. If the individual passes Desktop's screening, then Desktop places that individual's resume on the Web site for potential employers to review. Resumes produced by Desktop may be divided into three classes: (1) resumes and job applications prepared by the applicants and submitted to Desktop; (2) resumes prepared by or presented by Desktop to potential employers; and (3) Desktop's internal computerized database of applicants and their resumes, testing data, and job application data. Potential employers may select and schedule interviews with selected candidates through the Web site.

Desktop has received resumes from individuals residing in more than 30 different states and at least one foreign country. Among the resumes produced by Desktop from its internal computer database is one from a former Oregon resident, James Gerling ("Gerling"). Gerling was employed by Intel in Aloha, Oregon until he decided to move to Virginia. The resume listed Gerling's most recent experience at Intel from "December 1996 to Present." Although Gerling indicated his parents' residence in Virginia Beach, Virginia, as his residence, he states that "[w]hile in Oregon, I decided to move to Virginia and submitted resumes seeking employment in Virginia." Declaration of James R. Gerling ("Gerling Dec"), ¶ 2.[1]

---

1. Desktop submitted a later affidavit in which Gerling is reported by the affiant to have stated that he "has no recollection of Desktop ... has no recollection submitting his resume to Desktop, or as to whether he was in Oregon or in Virginia when his resume was delivered to Desktop." Affidavit of Tuan Anh Nguyen, ¶ 2. However, the plaintiff is required merely to make a *prima facie* showing of personal jurisdiction to defeat a motion to dismiss. *Data Disc,* 557 F.2d at 1285. That is, plaintiff need only demonstrate facts that if true, would support jurisdiction over the defendant. *Ballard,* 65 F.3d at 1498. Therefore, for purposes of this motion, this court assumes the facts as submitted as Tech Heads are true.

Under the "training" section of Desktop's Web site, Desktop offers classes in a variety of different subject areas, mainly Web development and graphic design applications. It offers the classes in two locations only: Richmond, Virginia and "Northern Virginia."

Lastly, under the "Web and Multimedia Development and Design" section of the Web site, Desktop offers "Web site design, multimedia and video interaction, web site analysis, database integration, and e-commerce interactivity" and instructs potential clients to "contact us today to see how we can help you with your next project."

Desktop also advertises its services and solicits resumes and job inquiries by print media, television, radio, word of mouth, trade publications, and other communications media, including the Sunday edition of *The Washington Post. The Washington Post* is Desktop's local newspaper, but also is nationally circulated with Sunday editions available in a library in Portland, Oregon. These advertisements list a toll-free telephone number, 877–TEC–HEAD, for those wishing to contact Desktop.

### DISCUSSION

Desktop moves to dismiss the Complaint for lack of personal jurisdiction, asserting that it has had no continuous and systematic contacts with Oregon and has not purposefully availed itself of the opportunity to conduct business in Oregon. Tech Heads responds that personal jurisdiction is proper under Oregon's long-arm statute, ORCP 4.[2]

**2.** Specifically, Tech Heads asserts that personal jurisdiction is proper under ORCP 4C, D, and L, which provide for jurisdiction in the following circumstances:

4C   Local Act or Omission.
In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant
4D   Local Injury; Foreign Act.
In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:

Generally, determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due process. *Fireman's Fund*, 103 F.3d at 893. Because ORCP 4L confers personal jurisdiction coextensive with federal due process, however, "the analysis collapses into a single framework and the court proceeds under federal due process standards." *Perry v. RightOn.com*, 90 F.Supp. 2d 1138, 1140 (D.Or.2000), quoting *Millennium Enter., Inc. v. Millennium Music, LP*, 33 F.Supp.2d 907, 909 (D.Or. 1999). Thus, this court need not address whether ORCP 4C and 4D provide for personal jurisdiction over Desktop. Rather, this court need only address whether personal jurisdiction over Desktop comports with federal due process standards.

### I.  *Federal Due Process*

Due process requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The nature and quality of the contacts with the forum state necessary to support personal jurisdiction depends upon whether the

D(1) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
D(2) Products, materials, or things distributed, processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.
4L   Other Actions.
Notwithstanding a failure to satisfy the requirement of section B through K of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States.

plaintiff asserts general or specific personal jurisdiction over the defendant. *Perry,* 90 F.Supp. 2d at 1140.

## A.  *General Jurisdiction*

█ General jurisdiction refers to the authority of a court to hear any cause of action involving a defendant, regardless of whether the cause of action is grounded in the defendant's activities within the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In order for a court to assert general jurisdiction over a nonresident defendant, the plaintiff must demonstrate that the defendant has "continuous and systematic" contacts with the forum state. *Id.* at 416, 104 S.Ct. 1868.

Desktop has no physical presence in Oregon, is not registered to conduct business in Oregon, and has no registered agents, employees, or sales representatives in Oregon. No employee or officer of Desktop has ever traveled to Oregon. Desktop has never received a franchise inquiry from Oregon and has never offered a franchise to any Oregon resident or corporation. Tech Heads, therefore, cannot show the "continuous and systematic" contacts necessary for general personal jurisdiction.

## B.  *Specific Jurisdiction*

█ Specific jurisdiction refers to a situation in which the cause of action arises directly from a defendant's contacts with the forum state. *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir.1990). In order to establish specific jurisdiction, a plaintiff must satisfy a three part test: (1) the nonresident defendant must purposefully direct its activities or consummate some transaction with the forum or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) the claim must be one arising out of or relating to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Ballard,* 65 F.3d at 1498. Each of these elements must be satisfied before the exercise of jurisdiction is proper. *Pacific Atlantic Trading Co., Inc. v. M/V Main Express,* 758 F.2d 1325, 1329 (9th Cir.1985).

### 1.  *Purposeful Availment*

In order to establish the first element of the due process analysis, Tech Heads must show that Desktop "has taken deliberate action within the forum state or [ ] has created continuing obligations to forum residents." *Ballard,* 65 F.3d at 1498. As stated by the Supreme Court, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Although contacts that are "isolated" or "sporadic" may support specific jurisdiction if they create a "substantial connection" with the forum, the contacts must be more than random, fortuitous, or attenuated. *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Tech Heads argues that Desktop is subject to jurisdiction in Oregon because: (1) Desktop's allegedly infringing activities cause harm to Tech Heads in Oregon; and (2) Desktop's contacts with Oregon include a highly interactive Internet Web site accessed by at least one Oregon resident, advertising in a national newspaper circulated in Oregon, and threats of litigation in Oregon. Desktop responds that it should not be subject to personal jurisdiction in Oregon simply for maintaining an Internet Web site and that any other contact it may have with Oregon is insufficient to establish personal jurisdiction.

#### a.  *Effects of Desktop's Conduct*

█ To establish specific jurisdiction in Oregon, Tech Heads first seeks to invoke the "effects" test described in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and *Core–Vent Corp.*

*v. Nobel Indus.,* 11 F.3d 1482 (9th Cir. 1993), and later applied in *Panavision Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998), to argue that the effects of Desktop's infringing activities have damaged Tech Heads in its principal place of business, Oregon. "Under *Calder,* personal jurisdiction can be based upon: (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." *Perry,* 90 F.Supp.2d at 1140, citing *Panavision Intern., L.P.,* 141 F.3d at 1321.

Tech Heads' reliance on *Panavision,* however, is misplaced. In *Panavision,* the defendant had established an Internet Web site using Panavision's trademark as its domain name. The Internet Web site simply displayed a photograph of a city in Illinois. The defendant offered to abandon the domain name and Internet Web site if Panavision paid him $13,000. After Panavision refused, the defendant registered Panavision's other trademark, Panaflex, as a domain name. The Panaflex Internet Web site simply displayed the word "Hello." The Ninth Circuit noted that the defendant's conduct, "as he knew it likely would," had the effect of injuring Panavision in California, its principal place of business and the center of the movie and television industry. *Id.* at 1322. The court concluded that the purposeful availment requirement necessary for specific jurisdiction was satisfied under the "effects test."

In contrast, Tech Heads has presented no evidence that Desktop intentionally directed its activities at Oregon knowing that Tech Heads would be harmed or that Desktop intentionally targeted Tech Heads itself. Desktop's pre-registration search and lengthy registration process did not reveal the existence of Tech Heads' name. Absent some evidence that Desktop intentionally directed its activities at Oregon intending harm to Tech Heads, Tech Heads fails to assert jurisdiction under the "effects" test.

### b. *Internet Web site Plus Additional Contacts*

Tech Heads also asserts jurisdiction under the traditional "minimum contacts" jurisprudence based on Desktop's Internet Web site and related contacts with Oregon. Many district courts, but few Circuit courts, have addressed whether personal jurisdiction is proper when the defendant's Internet Web site is the sole or primary contact with the resident forum. The Ninth Circuit has held that simply registering another's trademark as an Internet domain name and posting a passive web site on the Internet is insufficient to subject a non-resident defendant to jurisdiction. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir.1997). In *Cybersell,* the defendant's Web site included only a Florida phone number and an invitation to communicate by e-mail, and the defendant had no additional contacts with forum residents. The Ninth Circuit explained that to exercise jurisdiction in that case, "something more" must exist demonstrating that the defendant directed his activity at the forum state. *Id.* at 418.

Here, Desktop's Web site is not a passive Web site as described in *Cybersell* because it actively encourages and seeks an exchange of information and commerce. In addition, unlike *Cybersell,* Tech Heads has introduced evidence of additional non-Web site contacts with Oregon. Thus, although helpful, *Cybersell* is not dispositive given the particular facts of this case. Rather, this court looks for guidance in the plethora of recent district court cases addressing this issue.

*Millennium* surveyed the state of the law regarding the relationship between personal jurisdiction and Internet Web sites and further developed the analysis employed by the Ninth Circuit in *Cybersell.* The plaintiff in *Millennium* sought personal jurisdiction in Oregon over the defendant because the defendant's Internet Web site was interactive rather than passive. *Millennium,* 33 F.Supp.2d at 913. At the defendant's Web site, "per-

sons can purchase compact discs, request franchising information and join a discount club." *Id.* However, no forum resident requested franchise information or joined a discount club. The only actual sale of compact discs in Oregon was disregarded by the court because it was nothing more than a transparent attempt by the plaintiff to manufacture a contact with the forum. Lacking an actual contact, the plaintiff asserted that the defendant's active, rather than passive, Web site was a sufficient contact for personal jurisdiction. "In other words, plaintiff argues that purposeful availment is satisfied by an Internet Web site which allows for the exchange of information between the Web user and the Web site, regardless of whether an actual exchange of information occurred with residents of this forum." *Id.*

*Millennium* adopted the "sliding scale" analysis employed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1123 (W.D.Pa.1997) and cited with approval in *Cybersell, Inc.,* 130 F.3d at 414, to determine whether a Web site could support personal jurisdiction. According to the "sliding scale," "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Millennium,* 33 F.Supp.2d at 915, quoting *Zippo Manufacturing Co.,* 952 F.Supp. at 1124. At one end of this scale, a Web site enables the defendant to conduct business over the Internet with residents of the forum, and the defendant does so. Courts have generally found personal jurisdiction in these cases. At the other end of the scale are "passive" Web sites accessible to users in the forum state and elsewhere which, as in *Cybersell,* are generally insufficient for personal jurisdiction. In the murkier middle of the scale are interactive Web sites which allow a user to exchange information with the host computer. These Web sites are problematic in terms of personal jurisdiction, and courts vary in their approach.

Applying the "sliding scale," this court must determine where Desktop's Web site falls on such a scale. *Millennium* declined to categorize the defendant's Web site as "active" because "such designation [is] intended for those businesses which conduct a significant portion of their business through ongoing Internet relationships; for example, by entering into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Id.* at 920. Other courts have not taken such a restrictive view of this "active" end of the scale, however. In *Stomp v. NeatO, LLC,* 61 F.Supp.2d 1074, 1078 (C.D.Cal.1999), the defendant's Web site was highly commercial in nature, but the plaintiff could only point to two actual transactions with forum residents, which the plaintiff had plainly manufactured. The court nevertheless stated:

> Although [defendant's] website provides information about the company, customer service, and technical support, a substantial portion of the site is dedicated to allowing the consumer to purchase [defendant's] products on-line. [Defendant's] on-line sales constitutes conducting business over the Internet, and therefore under the test enumerated in *Zippo,* 952 F.Supp. at 1124, asserting personal jurisdiction comports with due process.

*Id.* at 1078.

Here, as the Web site in *Stomp,* Desktop appears to conduct most of its business through its Web site but has had little direct contact with Oregon residents. Tech Heads has produced only one instance of an Oregon resident contacting Desktop through its Website, which involved nothing more than the resident submitting his resume to Desktop. There is no evidence of a contract between any Oregon resident and Desktop, or any files or information of any kind transmitted by Desktop to Oregon. This court is therefore reluctant to find Desktop's Web site "active."

However, Desktop's Web site is certainly interactive. Instead of only providing information to those who choose to visit it, Desktop's Web site encourages interactivity by users exchanging information with Desktop through the Web site, getting help with technical projects and questions, searching a database of resumes, or posting a resume. As such, at a minimum, Desktop's Web site falls in the middle of the sliding scale, requiring further inquiry into the "level of interactivity and commercial nature of the exchange of information" in order to determine whether jurisdiction is proper. *Zippo*, 952 F.Supp. at 1124. At least one district court decision has taken a "broad view" and based personal jurisdiction solely on an interactive Web site without requiring actual contact with forum residents. *See Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996) (finding jurisdiction despite evidence of any actual transactions with forum residents). *Millennium*, however, determined that this middle zone of the sliding scale

> needs further refinement to include the fundamental requirement of personal jurisdiction: "deliberate action" within the forum state in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at residents of the forum state. This, in the court's view, is the "something more," that the Ninth Circuit intended in *Cybersell* and *Panavision*.

*Id* at 921.

In rejecting the plaintiff's assertion of jurisdiction based solely on the defendant's interactive Web site, *Millennium* explained that "[u]ntil transactions with Oregon residents are consummated through defendants' Web site, defendants cannot reasonably anticipate that they will be brought before this court, simply because they advertise their products through a global medium which provides the capability of engaging in commercial transactions." *Id.* at 923.

■ In contrast to *Millennium*, Tech Heads has presented evidence of a highly interactive Web site and one actual transaction involving an Oregon resident. Though the actual number of transactions with Oregon is the smallest number possible, "the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts." *Stomp*, 61 F.Supp. 2d at 1078, citing *CompuServe v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996). *Stomp* found jurisdiction "consistent with the familiar precedents of 'minimum contacts' jurisprudence[,]" over a defendant with an interactive Web site and two sales transactions with California citizens via the Internet. *Id.* After noting that "these two sales were made to Stomp's President and a friend of his[,]" (*id.* at 1076 n. 2) the court nevertheless found these two contacts sufficient to establish jurisdiction. *Id.* at 1078. Here, unlike *Stomp*, there is no indication that Gerling's actions were motivated by this lawsuit. Rather, he submitted a resume to Desktop presumably because he was aware that Desktop acted as a placement agency for technically-trained individuals interested in working in the Virginia area. By accepting the resume from Gerling, Desktop either explicitly (through some sort of contract or agreement) or implicitly obligated itself to attempt to find employment for an Oregon resident in the Virginia area.

Additionally, in contrast to *Cybersell*, Desktop does not merely advertise, sell products, or offer information through its Web site. Rather, it actively encourages and receives resumes from job-seekers and solicits persons seeking training and persons seeking help with Internet-related projects. In an effort to attract customers and clients, Desktop has purposefully reached out across the United States, including Oregon, and around the world, not only through its Web site, but also through national advertising and a toll-free telephone number. Desktop's advertisements with the Tech Heads marks appear in a nationally circulated newspaper, *The Washington Post*, and reach Oregon and

other states. While Desktop asserts that *The Washington Post* is also one of its local newspapers, Desktop does not confine its activities to the local area. Instead, it accepts resumes on a global basis. For those anywhere in the world with access to the Internet, the *Washington Post,* or the telephone, who wish to relocate to the Virginia area, Desktop acts as a placement agency, screening and testing candidates while working to secure them employment.[3] This is a commercial activity involving individuals from across the United States and in foreign countries from which Desktop presumably receives income. Desktop should therefore reasonably expect its actions to subject it to jurisdiction in states where its actions cause harm.

■ Tech Heads also contends that letters to its counsel in Oregon from Desktop's counsel demonstrate some measure of "purposeful availment." Desktop sent at least three letters to Tech Heads' counsel, but only after Tech Heads first sent a letter to Desktop threatening litigation. Because the correspondence was initiated by Tech Heads, both by inviting Desktop to negotiate and by threatening legal action, Desktop cannot be subject to jurisdiction on this basis. "Only those contacts with the forum that were created by the defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be considered for due process purposes." *Edberg v. Neogen Corp.,* 17 F.Supp.2d 104, 112 (D.Conn.1998).

In sum, Tech Heads has established the minimum contacts that are a prerequisite to the exercise of jurisdiction over Desktop. By posting a highly commercial, highly interactive Web site on the World Wide Web, engaging in Internet commerce with at least one Oregon resident, advertising in a national newspaper, and providing a toll-free number, Desktop has intentionally availed itself of jurisdiction in Oregon.

### 2. *Claims arising out of or Relating to Desktop's Forum State Activities*

The second requirement for finding specific personal jurisdiction is that the plaintiff's claim must arise out of or relate to the defendant's forum-related activities. *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414, 104 S.Ct. 1868. The Ninth Circuit has adopted the "but for" test to determine if this requirement is met. *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 385 (9th Cir.1990), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *see also Panavision Inter., LP,* 141 F.3d at 1322 (the test is whether the plaintiff "would not have been injured 'but for' the defendant's ... conduct directed toward [the plaintiff]").

Tech Heads' claims are based on Desktop's unauthorized use of the Tech Heads marks. These marks, or similar marks, are used to identify Desktop's Web site and also are used in Desktop's toll-free telephone number. In addition, Desktop's nation-wide newspaper advertising invites job-seekers to contact "Techead." Therefore, Tech Heads' claims related to the forum-related contacts in this case.

Tech Heads has also submitted evidence that Desktop's advertising and use of the Tech Heads marks appear to have caused actual confusion in the marketplace. On April 24, 2000, Tech Heads received an email from an individual named Derek Rivers ("Rivers") seeking employment in the Richmond, Virginia area responsive to a television advertisement that Rivers saw in Virginia. Desktop apparently advertises its services under the mark Techead with television commercials in the Virginia area. Rivers found Tech Heads' www.techeads.com Web site, instead of Desktop's www.techead.com Web site, after searching the Web to find the company he thought was in the advertisement. On June 1, 2000, an individual named Colby

---

**3.** Desktop, however, denies that Gerling was ever screened or tested and Tech Heads offers no evidence to the contrary.

Freeman in Oakland, California attempted to contact Desktop about a problem with an email attachment and instead contacted Tech Heads.

### 3. *Personal Jurisdiction is Reasonable in this Instance*

Lastly, the exercise of personal jurisdiction must be reasonable. In determining reasonableness, the court must weigh the following factors: (1) extent of defendants' purposeful injection into the forum; (2) defendants' burden from litigating in the forum; (3) extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Theo H. Davies & Co. v. Republic of the Marshall Islands,* 174 F.3d 969, 975 n. 4 (9th Cir.1999); *Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 561 (9th Cir.1995). No single factor is dispositive. *Terracom,* 49 F.3d at 561. However, once a plaintiff has shown "purposeful availment," jurisdiction is presumptively reasonable and the burden shifts to the defendant to show a "compelling case" why jurisdiction is unreasonable. *Roth v. Garcia Marquez,* 942 F.2d 617, 625 (9th Cir.1991). Here, Tech Heads has established that Desktop purposefully availed itself of jurisdiction in Oregon. Thus, Desktop has the burden to demonstrate a "compelling case" why this court's jurisdiction is unreasonable. Desktop has not done so.

An examination of these seven factors shows that this court's exercise of jurisdiction is not unconstitutionally unreasonable. The only factor that may support a finding of unreasonableness is the burden on Desktop of defending in Oregon. This one factor, however, is not substantial enough to tip the balance in favor of jurisdiction. Although Desktop will have to defend itself through litigation in another state, air travel is neither prohibitively expensive nor time-consuming and Desktop already has retained local counsel. In short, the admitted inconvenience created by this exercise of jurisdiction stops short of being unconstitutional.

As the court in *Stomp* recognized, "exercising personal jurisdiction in this case does not strictly comply with 'traditional' notions of jurisdiction." *Stomp,* 61 F.Supp.2d at 1080, citing *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. "Traditional" notions of jurisdiction, however, must remain flexible in the context of a constantly changing society where technological innovations have transformed the interactions that serve as the basis for personal jurisdiction. *See Burnham v. Superior Court,* 495 U.S. 604, 630, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (Brennan, J. concurring) (court must look to "contemporary notions of due process" to determine whether personal jurisdiction is proper). Lest personal jurisdiction in cases such as this be mistaken for over-reaching, those conducting business over the Internet can protect themselves with (1) a disclaimer that they will not sell products or provide services (or accept resumes from) outside a certain geographic area; and (2) an interactive agreement that includes a choice of venue clause to which a consumer or client must agree before purchasing any products or receiving any services. *See Stomp,* 61 F.Supp.2d at 1080–81. In utilizing such methods, a business may be able to limit the jurisdictions in which it could be subject to suit. "But when a merchant seeks the benefit of engaging in unlimited commerce over the Internet, it runs the risk of being subject to the process of the courts of those states." *Id.* at 1081.

### ORDER

For the reasons stated above, Desktop's Motion to Dismiss (docket # 4) is DENIED.