**Taig STEWART, Plaintiff,**

v.

**John HENNESEY d/b/a/ Hennessey Motorsports, Inc., Defendant.**

**No. 2:02CV–0114G.**

United States District Court,
D. Utah,
Central Division.

Aug. 2, 2002.

---

1. Visitation may be weekly on Fridays or otherwise as the U.S. Marshal determines proper.

## ORDER

J. THOMAS GREENE, Senior District Judge.

This matter came on for hearing before the Court on defendant's Motion to Dismiss. Charles Grober and David S. Hill appeared as counsel for the plaintiff, and Heinz J. Mahler appeared as counsel for the defendant. Both parties submitted memorandums and presented oral argument, after which the court took the matter under advisement.

Being now fully advised, the court enters its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Hennessey Motorsports, Inc. (hereinafter "Hennessey") is an automobile upgrade business with its principal place of business in Houston, Texas. Taig Stewart (hereinafter "Stewart") is a Utah citizen living in Orem, Utah.

On April 8, 2001, Stewart first contacted Hennessey by email. Stewart expressed interest in purchasing a Dodge Viper (hereinafter "Viper") from a Utah establishment and then having Hennessey perform extensive modifications to the car. Stewart learned of Hennessey's business through magazine articles and also through examining the Hennessey website. The website provides fairly detailed information concerning upgrades for Vipers, employment opportunities with Hennessey, contact information, location and map, and the ability to make online purchases over the internet. Due to the large amount of his transaction, Stewart made no direct purchases via the website.[1]

From approximately April 8th through the 18th, Stewart and Hennessey con-

Mark A. Larsen, Lisa L. Rico, David S. Hill, Larsen & Mooney Law, Salt Lake City, UT, for plaintiff.

Heinz J Mahler, Kipp & Christian, Salt Lake City, UT, for defendant.

---

1. The final contract between Stewart and Hennessey called for $142,500 worth of modifications to be performed on the Viper.

versed through emails and telephone conversations. Hennessey prepared estimates for Stewart including prices, recommended parts, and estimated time for completion of work on the Viper. Also during the month of April, Stewart purchased the Viper.[2]

Stewart and Hennessey exchanged more emails and telephone calls establishing detailed information not only on prices, parts and time of completion, but also when and where the car would be picked up and transported to Texas. Hennessey sent a transport driver to pick up the Viper from Orem, Utah on April 28, 2001. The car arrived at Houston, Texas on April 30, and Hennessey informed Stewart that work on the Viper would begin moving forward.

The original contract between Stewart and Hennessey called for approximately $122,500 worth of modifications to be performed by mid-July. Stewart and Hennessey agreed to amend the contract in July 2001 to include an additional $20,000 in upgrades, with time of completion extended to October 2001. At the present time the Viper still resides in Texas and the modifications are not yet complete.

Breach of contract and conversion claims are asserted. Stewart claims conversion because Hennessey allegedly sold removed parts from the Viper without Stewart's knowledge or consent, and that the conversion began in Utah when the delivery driver picked up the Viper.[3] Hennessey denies conversion, but alleges that in any event such conversion could only have taken place solely within the State of Texas.

ANALYSIS

Defendant argues that the complaint should be dismissed for lack of personal jurisdiction.

Although the plaintiff bears the burden of establishing personal jurisdiction over the defendant, only a prima facie showing need be made when a motion to dismiss for lack of jurisdiction is presented. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988). Further, "[t]he court resolves all factual disputes in favor of the plaintiff." *PurCo Fleet Servs., Inc. v. Towers*, 38 F.Supp.2d 1320, 1322 (D.Utah 1999). The Tenth Circuit has stated:

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995) (citations omitted); *see also Rambo*, 839 F.2d at 1417. *Accord Patriot Sys., Inc. v. C–Cubed Corp.*, 21 F.Supp.2d 1318, 1320 (D.Utah 1998). This court has noted that at this stage of the proceedings the plaintiff's burden is relatively light. "Jurisdiction over a non-resident corporate defendant can be either general or specific with the minimum standard of due process varying depending on whether the plaintiff's claims arise out of the defendant's contacts with the forum." *STV Int'l Marketing v. Cannondale Corp.*, 750 F.Supp. 1070, 1072–73 (D.Utah 1990) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 and 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

The Supreme Court of Utah has explained the distinction between general & specific jurisdiction as follows:

---

**2.** Although it is somewhat unclear, the Viper apparently was purchased in the state of Utah.

**3.** *See* discussion *infra* Part II B.

General personal jurisdiction is the concept reflected in a doing business statute, which requires *substantial and continuous* local activity; specific personal jurisdiction is the concept applicable to a long-arm statute, which requires only the minimum local contacts ... Where a defendant's forum state activity is extensive, the forum may assert personal jurisdiction on either related or unrelated claims (doing business concept). Where the defendant has only minimum contacts with the forum, personal jurisdiction may be asserted only on claims arising out of the defendant's forum state activity (long arm or "transaction of business" concept).

*Abbott G.M. Diesel v. Piper Aircraft,* 578 P.2d 850, 853 n. 6 (Utah 1978) (emphasis added) quoted in *STV Int'l Marketing, supra,* 750 F.Supp. at 1073. Since plaintiff asserts general and specific jurisdiction in this case, both will be discussed.

## I. GENERAL JURISDICTION

■ Plaintiff asserts the Hennessey website creates such a substantial and continuous activity as to subject the defendant to suit in this jurisdiction for any purpose. As support for this claim, plaintiff points to the ability to make online purchases directly through the website for automobile parts and apparel, as well as the ability to send email messages. Plaintiff also points to the Hennessey newsletter which reports the 4 million hits the site has received since June, 1999, as well as the success incurred through online ordering.

The Utah Court of Appeals noted twelve factors relevant to the existence of general personal jurisdiction, including whether the defendant is engaged in business in the forum state; maintains phone or fax listings in the forum state; advertises or solicits business in the forum state; travels to the forum state by way of salespersons, etc.; and recruits employees in the state.

*Buddensick v. Stateline Hotel, Inc.,* 972 P.2d 928, 930–31 (Ut.Ct.App.1998); *accord Soma Medical Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295–96 (10th Cir. 1999).

There is no dispute that Hennessey's website provides pertinent information to anyone in Utah with an internet connection. However, plaintiff only brings forth one specific transaction before this court. In *Millennium Enterprises, Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907, 910 (D.Or.1999), the court refused to assert general jurisdiction based on the defendant's website. *Millennium* did not find the single sale and sporadic purchases from the forum state significant enough to constitute substantial and continuous contacts with the forum state, stating "the court is aware of no case in which a court asserted general jurisdiction based on the existence of an Internet Web site." *Id.* at 910. This court is persuaded by this reasoning and regards the sole transaction in this case to be subject to the same infirmity as related to general jurisdiction.

This court will not subject a defendant to general jurisdiction based upon the mere possibility that other activity has occurred or will occur. "In order for a court to assert general jurisdiction, the defendant must have *continuous and systematic* contacts with the forum state." *Id.* (citing *Helicopteros,* 466 U.S. at 415, 104 S.Ct. 1868) (emphasis added). The fact the defendant entered this state through an agent, while providing evidence of *specific* jurisdiction, does not create the necessary substantial and continuous local activity within the forum state needed for general jurisdiction. *See STV International Marketing,* 750 F.Supp. at 1074; *cf Arguello v. Indus. Woodworking Mach Co.,* 838 P.2d 1120, 1121 (Utah 1992) (court finding that presence of defendant's service representative plus machinery in the State of Utah

was not enough to assert general jurisdiction). Similarly, the contacts of Hennessey in this state are not sufficient for general jurisdiction to be asserted.

## II. SPECIFIC JURISDICTION

■ "Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state." *Rambo*, 839 F.2d at 1416 (internal citations omitted). "Generally, determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due process."[4] *Tech Heads v. Desktop Service Center, Inc.*, 105 F.Supp.2d 1142, 1146 (D.Or.2000); *Rambo*, 839 F.2d at 1416–17.

Although Utah Code Ann. § 78–27–24 (1998) lists specific enumerated activities for finding jurisdiction, the Utah Supreme Court has ruled the statute should be read as broad as constitutionally possible, and should only be limited by the due process clause of the Fourteenth Amendment of the United States Constitution. *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985); *accord Nova Mud Corp. v. L.H. Fletcher*, 648 F.Supp. 1123, 1125 (D.Utah 1986). Under this analysis the two part-inquiry collapses into a single due process analysis being limited only by federal due process standards. *See Rambo*, 839 F.2d at 1416 (interpreting Okla-

homa statute for jurisdiction to the fullest extent of the Constitution of the United States).

### A. *Based Upon Activities at the Website*

Establishing jurisdiction through the Internet, or more specifically through a website, has been described as coming under a framework of three general categories within a sliding scale. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123–24 (W.D.Pa.1997). At one end of the spectrum, business is clearly conducted through the entering of contracts requiring repeated acts, such as the transmission of files over the Internet. These websites are said to subject the host provider to the user's jurisdiction. *Id.* at 1124. At the opposite end are passive websites which do little more than provide available information to the interested user and are not proper grounds to exercise personal jurisdiction. The middle ground contains interactive websites where users can exchange information with the host computer. Jurisdiction in these cases depends on "the level of interactivity and commercial nature of the exchange of information that occurs on the [website]." *Id.* This spectrum analysis appears to be gaining favor. *See also Soma Medical Int'l*, 196 F.3d 1292, 1296 (10th Cir.1999) (holding passive website to be an invalid reason for granting jurisdiction); *Patriot Sys., Inc.*, 21 F.Supp.2d at 1323–24 (concluding that defendant's passive website did not support

---

4. Previous district court opinions in the past have applied an oft used three-part jurisdictional analysis adding an intermediate step of whether the plaintiff's claim arises out of the defendant's activity within the forum state. *See generally, Nova Mud Corp.*, 648 F.Supp. at 1125–26; *PurCo Fleet Srvcs., Inc.*, 38 F.Supp.2d at 1323–25; *Frontier Fed. Sav. And Loan Ass'n v. Nat'l Hotel Corp.*, 675 F.Supp. 1293, 1296–98; *Patriot Sys., Inc.*, 21 F.Supp.2d at 1321. There can be no doubt that a nexus exists here between the plaintiff's claim and the defendant's activities; the delivery driver came to Utah and the web site was accessible in this state as well. Therefore, this court does not employ the traditional three-part analysis, but chooses rather to focus on the more pressing issue of whether the assertion of personal jurisdiction based on contracts at and upon a website violates federal due process.

the exercise of personal jurisdiction); *SF Hotel Co. v. Energy Invs., Inc.*, 985 F.Supp. 1032, 1033–36 (D.Kan.1997) (holding that the defendant maintained a passive website and was therefore not subject to general jurisdiction); *Millennium Enters. Inc.*, 33 F.Supp.2d at 915–18 (holding interactive website did not create general jurisdiction).

Hennessey claims it maintains a purely passive website. However, closer inspection reveals that it lies closer to the middle end of the spectrum. The advertisements, video clips, employment opportunities and the ability to make online purchases, all give the website an exceptionally interactive design, well between the two ends of the continuum.

For purposes of *specific* jurisdiction, the critical factor becomes the minimum contacts the website creates with the forum state. *See Millennium Enters., Inc.*, 33 F.Supp.2d at 920–21. In this regard, this court cannot ignore the many email and telephone calls in and out of the State of Utah, including the crucial email communication between plaintiff and defendant that firmly established the contract at hand; additionally, we note the substantial purchase which essentially was made through the website.[5] The Supreme Court has ruled that a defendant who reaches out beyond his or her native state and creates ongoing relationships and obligations with citizens of the forum state becomes subject to the forum state's jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Travelers Health Assn. v. Commonwealth of Virginia ex rel. State Corp. Com'n*, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). These ongoing rela-

tionships and obligations create the necessary minimum continual framework so as not to offend the traditional notions of fair play and substantial justice. *See generally Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

Courts have emphasized "purposeful availment", thus "[i]n first focusing on the defendant's interest, courts look for a purposeful act by which defendant avails himself of the privileges and protections of the forum." *Nova Mud Corp.*, 648 F.Supp. at 1126 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Once a defendant knowingly enters into a contract through a website, whether ·by email or through electronic commerce, that defendant has purposefully availed him or herself of the privileges of the forum state. Hence the defendant has been given clear notice that it may be subject to suit there. *See World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559. In the case at bar, the defendant freely chose to do business through its website with the plaintiff. In this regard, defendant cannot now claim lack of personal jurisdiction after enjoying the benefits afforded in this state.

Consistent with traditional analysis concerning minimum contacts with the state in question, it is the activities and *specific interactions* with the website which determine the existence of personal jurisdiction. This is consistent with *Zippo* and its progeny. Specific interactions at the website and emails may define more clearly wheth-

---

5. While plaintiff had the opportunity to make his purchases online through the website, he chose not to do so due to safety concerns of the large sum of money involved. Actual payment was instead made through a wire transfer. However, this court will not allow form to rule over substance and fault a party because of commonly held Internet concerns.

er a defendant has purposefully availed herself of the privileges of the forum state. Hence, an "interactive website" can establish jurisdiction when a defendant clearly conducts business through its website or emails. Thus, a website may progress along the spectrum depending upon actual interactions. *Compare with Patriot Sys., Inc.,* 21 F.Supp.2d at 1324 (acknowledging that websites are analyzed through a *spectrum* analysis); *Soma Medical Int'l,* 196 F.3d at 1296 (examining *specific facts* for website analysis). It appears to this court that the defendant in this case has purposefully availed itself of this state's jurisdiction by its website activities.

Once a purposeful act is established, we must consider whether other factors detract from possible jurisdiction. "[W]here a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174. Defendant presents no such considerations. Based upon the foregoing, this court rules that defendant's motion to dismiss for lack of personal jurisdiction should be denied.

**B.** *Based Upon Continuing Acts of Conversion In and Outside Utah and The Delivery Driver*

Plaintiff also asserts that Defendant submitted to jurisdiction in this case by committing tortious acts consisting of fraudulent misrepresentations and conversion. In this regard, plaintiff alleges that said acts began in this state when Defendant's delivery driver picked up the Viper in Orem, Utah. Applicable Utah law states:

Any person ... whether or not a citizen or resident of this state, who in person or *through an agent* does any of the following enumerated acts, submits him-

self ... to the jurisdiction of the courts of this state as to any claim arising from:
(1) the transaction of any business within the state;
(3) the causing of any injury within the State whether tortious or by breach of warranty.

Utah Code Ann. § 78–27–24 (1998) (emphasis added). Utah Code Ann. § 78–27–23 defines "transaction of business within this state" as "activities of a non-resident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah." *See also STV Int'l Marketing,* 750 F.Supp. at 1074–75. Defendant's decision to send their delivery driver to this state to continue the already established contract of modifying the Viper clearly falls under this definition.

Based upon the foregoing, defendant's motion to dismiss for lack of personal jurisdiction is denied.

IT IS SO ORDERED.